DUBUQUE ELECTRIC CO. v. CITY OF DUBUQUE, IOWA.

(Circuit Court of Appeals, Eighth Circuit. August 19, 1919.)

No. 5374.

CONSTITUTIONAL LAW ⊜⇒135 — PROVISION OF FRANCHISE GRANTED STREET RAILROAD NOT A "CONTRACT" WITHIN CONSTITUTIONAL PROTECTION—"CONTRACT."

A provision of a franchise ordinance granted by a city and accepted by a street railroad company, requiring the company to sell half-fare tickets to certain classes of passengers, *held* not to constitute a contract protected from change or annulment by the Legislature of the state by the contract clause of the federal Constitution, but a government regulation, made under state authority, and subject to revocation by the state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contract.]

Appeal from the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Suit in equity by the City of Dubuque, Iowa, against the Dubuque Electric Company. Decree for complainant, and defendant appeals. Reversed.

Harry B. Hurd, of Chicago, Ill. (P. J. Nelson, of Dubuque, Iowa, and Max Pam, of Chicago, Ill., on the brief), for appellant.

M. H. Czizek, of Dubuque, Iowa (M. D. Cooney, of Dubuque, Iowa, on the brief), for appellee.

Before HOOK and CARLAND, Circuit Judges, and YOUMANS, District Judge.

YOUMANS, District Judge. Appellee filed a bill in equity in the district court of Dubuque county, Iowa, to compel the appellant by mandatory injunction "to keep on hand at its principal office, half-fare tickets for sale to laborers, mechanics, workwomen, and working girls at the rate of 2½ cents each, good from 6:15 to 7:45 a. m. and 5:15 to 6:45 p. m., and to carry said persons over their said system upon payment of said half-fare rate during said hours." The Electric Company, which is a corporation of the state of Delaware, removed the case to the federal court. Upon a hearing in that court upon the bill and answer, the prayer of the appellee was granted, and the Electric Company appealed.

The bill is based on the provisions of an ordinance of the city of Dubuque, approved March 13, 1902, granting to the Union Electric Company, its successors and assigns, the right to lay tracks on certain streets of the city of Dubuque and operate thereon a street railway system. Section 18 of that ordinance provided that:

"Said Union Electric Company, its successors and assigns, shall during the entire period of this franchise constantly keep on hand at its principal office half-fare tickets for sale to laborers, mechanics, workwomen and working girls, at the rate of 2½ cents each, good during the following hours, to wit: 6:15 to 7:45 a. m., and 5:15 to 6:45 p. m., throughout the year, except on Sundays. Said tickets shall be sold in quantities of not less than forty.

"Transfers shall be issued when necessary to carry out the above provisions on all tickets, including half-fare tickets."

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The terms of this ordinance were accepted by the Union Electric Company, the predecessor of appellee, and were complied with until about the time of the bringing of this suit.

Appellant in its answer justifies its failure and refusal to comply with the terms of the ordinance as follows:

"Par. 7. Defendant avers that it is a common carrier of passengers within the 'meaning of the statutes of Iowa; that it has declined to keep for sale and sell half-fare tickets on its street car system in the city of Dubuque, in conformity with the provision of the franchise ordinance herein above referred to, because the same is contrary to and in violation of the statutes of Iowa, to wit, sections 2157f, 2157g, 2157h, 2157i, and 2157j of the Supplement of the Code of Iowa 1913.

"Par. 8. Defendant avers that under the terms and provisions of the statutes herein above referred to, which statutes are and constitute what is known as the Anti-Pass Law of Iowa, all common carriers of passengers for hire are forbidden to issue or sell tickets for transportation at reduced rates, and discriminate between the purchasers of the same, excepting persons falling within certain classes specifically designated in the statute, and the persons described in the ordinance herein above referred to do not fall within the excepted class designated in the statutes."

The act of the Legislature of Iowa referred to in the answer was approved April 10, 1907. The first section of that act reads as follows:

"No common carrier of passengers shall, directly or indirectly, issue, furnish or give any free ticket, free pass or free transportation for the carriage or passage of any person within this state except as permitted in the second section hereof. Nor shall any common carrier, in the sale of tickets for transportation at reduced rates, discriminate between persons purchasing the same, except the persons described in the second section of this act. Nor shall any person accept or use any free ticket, free pass or free transportation except the persons described in said section. The words 'free ticket,' 'free pass,' 'free transportation,' as used in this act shall include any ticket, pass, contract, permit or transportation issued, furnished or given to any person, by any common carrier of passengers, for carriage or passage, for any other consideration than money paid in the usual way at the rate, fare, or charge open to all who desire to purchase." Acts 32d Gen. Assem. c. 112.

The purpose of this act of the Legislature of Iowa is set out in its title which reads as follows:

"An act to prohibit common carriers of passengers from issuing, furnishing or giving free tickets, free passes, free transportation or discriminating reduced rates, except to certain described persons; to prohibit the acceptance or use of such free tickets, free passes, free transportation or discriminating reduced rates by any except certain described persons, providing a penalty for the violation of the act, also for annual reports and for the repeal of chapter ninety (90), Laws of the Thirty-first General Assembly."

The general application of the statute is departed from only in the exception in section 2 of the act, which reads as follows:

"Nothing in this act shall be construed to invalidate any existing contract between a street railway company and a city where a condition of a franchise grant requires the furnishing of transportation to policemen, firemen, and city officers, while in the performance of official duties."

This exception is referred to in the title by the words "except to certain described persons." This express exception precludes any other exception by construction. 36 Cyc. 1163.

The appellee contends that the ordinance constituted a contract binding on the Union Electric Company and its successor, the appellant in this case, that the act of the Legislature annuls a part of that contract, and that such annullment comes within the contract clause of the Constitution of the United States. In the case of City of Pawhuska v. Pawhuska Oil & Gas Co. and State of Oklahoma, 250 U. S. 394, 39 Sup. Ct. 526, 63 L. Ed. ——, decided by the Supreme Court of the United States on June 9, 1919, involving the question now under consideration, Mr. Justice Van Devanter speaking for the court, said:

"It is not contended, nor could it well be, that any private right of the city was infringed, but only that a power to regulate in the public interest theretofore confided to it was taken away and lodged in another agency of the state—one created by the state Constitution. Thus the whole controversy is as to which of two existing agencies or arms of the state government is authorized for the time being to exercise in the public interest a particular power, obviously governmental, subject to which the franchise confessedly was granted. In this no question under the contract clause of the Constitution of the United States is involved, but only a question of local law, the decision of which by the Supreme Court of the state is final.

" 'Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the states as may be intrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the state within the meaning of the federal Constitution.' Hunter v. Pittsburg, 207 U. S. 161, 178, 28 Sup. Ct. 40, 46, 52 L. Ed. 151.

"In Dartmouth College v. Woodward, 4 Wheat. 518, 629–630, 659–664, 668, 694, 4 L. Ed. 629, it was distinctly recognized that as respects grants of political or governmental authority to cities, towns, counties, and the like the legislative power of the states is not restrained by the contract clause of the Constitution; and in East Hartford v. Hartford Bridge Co., 10 How. 511, p. 533, 13 L. Ed. 518, where was involved the validity of a state statute recalling a grant to a city, theretofore made and long in use, of power to operate and maintain a ferry over a river, it was said, that the parties to the grant did not stand 'in the attitude towards each other of making a contract by it, such as is contemplated in the Constitution, and as could not be modified by subsequent legislation. The Legislature was acting here on the one part, and public municipal and political corporations on the other. They were acting, too, in relation to a public object, being virtually a highway across the river, over another highway up and down the river. From this standing and relation of these parties, and from the subject-matter of their action, we think that the doings of the Legislature as to this ferry must be considered rather as a public law than as contracts. They related to public interests. They changed as those interests demanded. The grantees likewise, the towns being mere organizations for public purposes, were liable to have their public powers, rights, and duties modified or abolished at any moment by the Legislature. * * * Hence, generally, the doings between them and the Legislature are in the nature of legislation rather than compact, and subject to all the legislative conditions just named, and therefore to be considered as not violated by subsequent legislative changes.' In New Orleans v. New Orleans Water Works Co., 142 U. S. 79, p. 91, 12 Sup. Ct. 142, p. 147, 35 L. Ed. 943, where a city, relying on the contract clause, sought a review by this court of a judgment of a state court sustaining a statute so modifying the franchise of a water works company as to require the city to pay for water

used for municipal purposes, to which it theretofore was entitled without charge, the writ of error was dismissed on the ground that no question of impairment within the meaning of the contract clause was involved. Some of the earlier cases were reviewed, and it was said: 'But further citations of authorities upon this point are unnecessary; they are full and conclusive to the point that the municipality, being a mere agent of the state, stands in its governmental or public character in no contract relation with its sovereign, at whose pleasure its charter may be amended, changed, or revoked, without the impairment of any constitutional obligation, while with respect to its private or proprietary rights and interests it may be entitled to the constitutional protection. In this case the city has no more right to claim an immunity for its contract with the waterworks company than it would have had if such contract had been made directly with the state. The state, having authorized such contract, might revoke or modify it at its pleasure.'

"The principles announced and applied in these cases have been reiterated and enforced so often that the matter is no longer debatable. Covington v. Kentucky, 173 U. S. 231, 241, 19 Sup. Ct. 383, 43 L. Ed. 679; Worcester v. Worcester Street Ry. Co., 196 U. S. 539, 548, 25 Sup. Ct. 327, 49 L. Ed. 591; Braxton County Court v. West Virginia, 208 U. S. 192, 28 Sup. Ct. 275, 52 L. Ed. 450; Englewood v. Denver & South Platte Ry. Co., 248 U. S. 294, 296, 39 Sup. Ct. 100."

The power of the Legislature of Iowa to change a contract in a franchise granted by a municipality is fully recognized and upheld by the Supreme Court of that state. Sioux City R. Co. v. Sioux City, 78 Iowa, 742, 39 N. W. 498; Marshalltown Light P. & Ry. Co. v. City of Marshalltown, 127 Iowa, 637, 103 N. W. 1005; Sioux City Street Ry. Co. v. Sioux City, 138 U. S. 98, 11 Sup. Ct. 226, 34 L. Ed. 898. It follows that the contract in the ordinance could be annulled by the act of the Legislature without violating the Constitution of the United States.

In an amendment to its answer the appellant also set up the defense that the provisions of the ordinance were void under the Constitution of Iowa. The section of the Iowa Constitution referred to reads as follows:

"All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen or class of citizens, privileges or immunities, which upon the same terms shall not equally belong to all citizens." Article 1, § 6.

Since the view which the court entertains of the question based on the Constitution of the United States is decisive of this case, it is unnecessary to consider the question based upon the Constitution of the state of Iowa.

The cause is reversed and remanded, with directions to dismiss the bill.