CITY OF HELENA, APPELLANT, v. HELENA LIGHT & RAILWAY CO., RESPONDENT.

(No. 5,033.)

(Submitted March 10, 1922.   Decided April 5, 1922.)

[207 Pac. 337.]

*Injunction—Cities and Towns—Street Railways—Abandonment of Part of Line—Franchises—Contracts—State Control—Public Service Commission—Jurisdiction.*

Cities and Towns—Street Railway—Abandonment of Part of Line—Franchise—Construction.
1.  A reservation in an ordinance granting a franchise to operate a street railway system consisting of several lines, to the effect that the grant should not be construed as requiring the grantee to continue the operation of its lines "or any part or portion thereof" at a loss, *held* to authorize the abandonment of an entire line in such case, but not a part of such line.

Same—Franchise—Strict Construction Against Grantee, When.
2.  One who claims a franchise or privilege in derogation of the common rights of the public must be able to establish his claim by a grant clearly and definitely expressed, and may not enlarge it by doubtful or equivocal provisions or probable inferences, and if the grant is susceptible of two meanings, one restricting and the other enlarging his powers, that construction will be adopted which works the least harm to the public.

Same—Public Utilities—Operation at Loss cannot be Compelled.
3.  A public utility cannot be compelled to operate its entire business or a branch of it at a loss in the absence of a statute or contract requiring it to do so.

Same—Franchise—Contract Subject to State Control.
4.  While the grant of a street railway franchise and its acceptance constitute a contract, it is one subject to legislative restriction, regulation and control by the public service commission and therefore cannot be claimed to be inviolable so as to prevent the grantee from discontinuing a part of a line of its system in face of a provision in the franchise requiring it to operate the line for the entire term of the grant, irrespective of the question of loss sustained in its operation.

Same—Franchise—Municipality Agent of State.
5.  A city is a political subdivision of the state for governmental purposes, capable of exercising only such powers as are granted it either directly or by necessary implication, and, therefore, when it grants a franchise it acts merely as the agent of the state subject to the power of the legislature to say upon what terms the grant shall be enjoyed.

---

4.  Power of state to increase franchise rates, see note in 9 A. L. R. 1165.

Same—Streets are Public Highways—Franchise Subject to State Laws.
  6.  The streets of a city are public highways and jurisdiction over them is primarily in the state, though the municipality is charged with the duty of keeping them in repair and the cost of maintenance is imposed upon it, and a grant of a franchise of their use for street railway purposes is subject to the general laws of the state.

Same—Street Railways—Rights Conferred by Franchise not Property Rights Beyond Legislative Control.
  7.  The rights conferred by provisions in a street railway franchise requiring the grantee to sell commutation tickets, to make a minimum number of trips over its lines between designated hours, *etc.*, do not constitute property rights beyond legislative control.

Same—Street Railways—Abandonment of Line—Public Service Commission—Jurisdiction.
  8.  *Held*, in an action by a city to enjoin a street railway company from abandoning a portion of one of its lines on the ground that its operation entailed a loss, that the public service commission has jurisdiction to relieve plaintiff of its contract obligation to operate the line during the entire period covered by the franchise, but that until the state has acted the obligation to run it is a continuing one and must be discharged.

*Appeal from District Court, Lewis & Clark County; A. J. Horsky, Judge.*

ACTION by the City of Helena against the Helena Light & Railway Company. Judgment for defendant. Plaintiff appeals. Reversed and cause remanded, with directions.

*Mr. E. C. Day* and *Mr. H. G. McIntire,* for Appellant, submitted a brief and one in reply to that of respondent; *Mr. Day* argued the cause orally.

There can be no serious dispute that by the acceptance by the defendant of the franchise in question a binding contract was entered into between plaintiff and defendant. This is directly so held by this court in *State* v. *Billings Gas Co.,* 55 Mont. 102, 173 Pac. 799, and it is in accord with the authorities generally. (*Helena Light etc. Co.* v. *City of Helena,* 47 Mont. 18, 31, 130 Pac. 446; *City of Cleveland* v. *Cleveland City Ry. Co.,* 194 U. S. 517, 3 A. L. R. 696, 48 L. Ed. 1102, 24 Sup. Ct. Rep. 756; *United States* v. *Stanford,* 69 Fed. 25.)

---

7. Right of third person, who may derive benefit from franchise to public service corporation, to object to alteration of franchise terms, see note in **Ann. Cas. 1913D,** 1089.

The contract is mutual and reciprocal, and for familiar constitutional reasons could not be abrogated in any of its particulars except by the agreement of both parties, which is here lacking. Of course, to abandon the entire line, as defendant is charged with threatening to do and which the answer admits it is about to do, would be a violation of all these agreements, for the continued maintenance of the line is necessary, is indispensable to the possibility of their fulfillment. It is well settled that "if a party charge himself with an obligation possible to be performed, he must abide by it unless performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties will not excuse performance. Where the parties have made no provision for a dispensation the terms of the contract must prevail." (*Columbus Ry. P. & L. Co.* v. *City of Columbus,* 249 U. S. 399, 63 L. Ed. 669, 39 Sup. Ct. Rep. 349; *City of Bridgeton* v. *Bridgeton & M. Traction Co.,* 62 N. J. L. 592, 45 L. R. A. 837, 43 Atl. 715.)

There is nothing to the contrary of what is above stated in *State ex rel. Knight, H. P. & L. Co.,* 22 Mont. 391, 44 L. R. A. 692, 56 Pac. 685, for in that case there was no such reciprocal, mutual contract as in the present case. "There is a wide difference between a *mandamus* to operate and an injunction against an abandonment." (*Brown* v. *Atlantic etc. Ry. Co.,* 126 Ga. 248, 7 Ann. Cas. 1026, 1931, 55 S. E. 24; *Lyon & Hoag* v. *Railroad Commission,* 183 Cal. 145, 11 A. L. R. 249, 190 Pac. 795; *Brooks-Scanlon Co.* v. *Railroad Commission,* 251 U. S. 396, 64 L. Ed. 323, 40 Sup. Ct. Rep. 183; *Selectmen of Amesbury* v. *Citizens' etc. Ry. Co.,* 199 Mass. 394, 19 L. R. A. (n. s.) 865, 85 N. E. 419; *Helena etc. Co.* v. *Helena,* 47 Mont. 18, 130 Pac. 446.) It is familiar law in the construction of a franchise that the same should be liberally construed in favor of the public and strictly against the grantee thereof. (25 R. C. L. 1110, Street Railways, Nos. 21, 25, 30; *Knoxville Water Co.* v. *Knoxville,* 200 U. S. 22, 50 L. Ed. 353, 26 Sup.

Ct. Rep. 224.) . The case as here shown will not justify a
court of equity to interfere and relieve a party of the obliga-
tion of its contract.   (*Columbus Ry. etc. Co.* v. *City of Colum-
bus,* 249 U. S. 399, 63 L. Ed. 669, 39 Sup. Ct. Rep. 349.)

*Messrs. Gunn, Rasch & Hall,* for Respondent, submitted a
brief; *Mr. M. S. Gunn* argued the cause orally.

This ordinance does not purport to grant a franchise, but
is merely permissive in character, and in that respect is like
the ordinance considered in the case of *State* v. *Helena P.
& L. Co.,* 22 Mont. 391, 44 L. R. A. 692, 56 Pac. 685.   The
provision with reference to operating cars applies only so long
as the defendant exercises the license granted.   (*State* v.
*Helena P. & L. Co.,* 22 Mont. 391, 44 L. R. A. 692, 56 Pac.
685.)

We submit: 1. That by virtue of section 5 of Ordinance No.
619, the Kenwood line is one of the "railway lines" referred
to in the closing sentence of section 4 of Ordinance No. 491,
and that as it appears from the evidence, and the lower court
found, that the Kenwood line can be operated only at a loss,
the operation of such line cannot be compelled. 2. That if
the Kenwood line is not one of the lines referred to in the
closing sentence of section 4 of Ordinance No. 491, then there
is no contract whatever requiring operation of that line, and
the case is controlled by the decision of this court in *State*
v. *Helena P. & L. Co.* above cited.

If, however the construction contended for in behalf of
appellant is accepted, the contract to maintain and operate
the Kenwood line is one made by the city in the exercise of
its governmental power, and the state, through its legislative
body, could relieve the railway company from the obligation
imposed thereby.   (*City of . Worcester* v. *Worcester C. S. R.
Co.,* 196 U. S. 539, 49 L. Ed. 591, 25 Sup. Ct. Rep. 327; *New
Orleans* v. *New Orleans Water Works Co.,* 142 U. S. 79, 35
L. Ed. 943, 12 Sup. Ct. Rep. 142; *Dubuque Electric Co.* v.

*Dubuque,* 260 Fed. 353, 171 C. C. A. 219, 10 A. L. R. 495.)
Such a contract is not within the exception contained in section 12 of the Public Service Commission Act. (*State ex rel. Billings* v. *Billings Gas Co.,* 55 Mont. 102, 73 Pac. 799.)

In the brief for appellant attention is called to section 12 of Article XV of the Constitution, which provides that: "No street or other railroad shall be constructed within any city or town without the consent of the local authorities having control of the street or highway proposed to be occupied by such street or other railroad." This provision of the Constitution does not, to any extent, divest the state of its police power. A contract made by a city with reference to the construction and operation of a street railroad is not inviolable, and the legislative assembly may regulate rates or otherwise exercise the police power, the same as though the foregoing provision had not been incorporated in the Constitution. (*Salt Lake City* v. *Utah Light & Traction Co.,* 52 Utah, 210, 3 A. L. R. 715, 173 Pac. 556; *Chicago Rys. Co.* v. *City of Chicago,* 292 Ill. 190, 126 N. E. 585; *City of Chicago* v. *O'Connell,* 278 Ill. 591, 8 A. L. R. 916, 116 N. E. 210; *In re Fleming,* 191 N. Y. Supp. 586, 117 Misc. Rep. 373.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On April 4, 1901, the city council of Helena enacted Ordinance No. 491, by the term of which there was granted to George M. Brill and his associates, successors and assigns, the right to acquire, construct, operate and maintain a street railway system over and upon the streets and avenues of the city then occupied by the tracks of the Helena Power and Light Company, which streets and avenues were particularly mentioned, and in addition thereto the right to use "such other streets and avenues as may hereafter be deemed needful by said grantee for the conduct of his said street railway business, upon written application therefor, by and with the con-

sent of a majority of the members of the city council.'' The franchise was granted for the period of twenty-five years, fixed a schedule of fares, a minimum number of trips to be run daily and the royalty to be paid by the grantee to the city. It provided, also, for acceptance in writing and for forfeiture for nonuser. Other provisions will receive consideration later.

The defendant Helena Light and Railway Company succeeded to all the rights granted and became subject to all the liabilities imposed by the ordinance, and in 1906 applied in writing to the city council for permission to change one of its lines by abandoning the use of Clark Street and small portions of other streets and by constructing and operating the line upon Lawrence Street, a portion of Harrison Avenue and a portion of Knight Street thereby again completing the unit which is designated the Kenwood line. To this application the council responded by enacting Ordinance No. 619, which expressed the council's consent to the abandonment of the designated parts of the old line and to the construction and operation of the new line, fixed the time for the removal of the old track and the construction of the new parts, provided for an indemnity bond and for an acceptance of the terms of the ordinance. Other provisions will be referred to later.

Acceptance of the terms of the ordinance was filed with the city, the designated changes in the line were completed and the line as thus changed has since been operated. Early in 1921 the railway company indicated its intention to abandon that portion of the Kenwood line from the intersection of Park Avenue and Lawrence Street to Kenwood and to remove its tracks and appliances from the streets and avenues occupied by them. To prevent such action, this suit was instituted and a temporary injunction secured. Upon final hearing a permanent injunction was denied and a judgment entered dismissing the complaint. From that judgment this appeal is prosecuted.

It is the contention of the railway company that its right

63 Mont.—8

[1, 2] to abandon the portion of the Kenwood line in question was expressly reserved to it in that portion of Ordinance No. 491 which reads as follows: "But it is further understood and agreed that nothing in this ordinance contained shall be taken or construed as requiring the grantee to continue the operation of said railway lines or any part or portion thereof at a loss." The language of this reservation is not well chosen and the meaning is somewhat obscure. In the granting portion of the ordinance, each of the lines constituting the defendant's railway system is described minutely, the Kenwood line as commencing at the car barn, Cutler and Main Streets, then traversing certain designated streets and avenues to the city limits. Does the reservation above authorize the railway company to abandon a part of one unit, or is it to be understood as granting permission to abandon the entire system or any entire line comprised in the system? That the latter is the correct interpretation of the provision we entertain no doubt. It is a rule of universal application that in all grants by the government to individuals or corporations of rights, privileges and franchises, the words are to be taken most strongly against the grantee, and one who claims a franchise or privilege in derogation of the common rights of the public must be able to establish his claim by a grant clearly and definitely expressed and he cannot enlarge it by doubtful or equivocal provisions or probable inferences. (12 R. C. L. 124.) If the grant is susceptible of two meanings, one restricting and the other enlarging the powers under the franchise, that construction will be adopted which works the least harm to the public. (*Blair* v. *Chicago*, 201 U. S. 400, 50 L. Ed. 801, 26 Sup. Ct. Rep. 427.) In *Holyoke* v. *Lyman*, 15 Wall. (82 U. S.) 500, 21 L. Ed. 133, the supreme court of the United States expresses the rule as follows: "Whenever privileges are granted to a corporation, and the grant comes under revision in the courts, such privileges are to be strictly construed against the corporation and in favor of the public, and * * * nothing

passes but what is granted in clear and explicit terms. Whatever is not unequivocally granted in such Acts is taken to have been withheld." Many of the decided cases affirming the rule as here stated will be found cited in the notes in 26 C. J. 1031, 1032. A cogent reason for the rule is stated in *Blair* v. *Chicago,* above, as follows: "It is a matter of common knowledge that grants of this character are usually prepared by those interested in them, and submitted to the legislature with a view to obtain from such bodies the most liberal grant of privileges which they are willing to give. This is one among many reasons why they are to be strictly construed." That the railway company itself understood the reservation in the sense here indicated is evidenced by the fact that upon the hearing in the court below the testimony introduced by it in support of the defense that the line could be operated only at a loss, related to the line in its entirety and not to the particular portion sought to be abandoned, and common sense would seem to indicate clearly that under practically any conceivable circumstances, it would be impossible for the railway company to show that operation of any particular section of the line would necessarily result in loss. In our opinion, it is a fair construction of the reservation that it was intended only to authorize the discontinuance of any unit, the operation of which entails a loss and that it was never intended to permit the abandonment of a part of one entire line. But if the language employed in the reservation is susceptible of two constructions, then it is incumbent upon us to adopt the interpretation most favorable to the public. Under this construction it becomes immaterial whether by the enactment of Ordinance No. 619 it was intended to grant a new franchise or only a permit to exercise the franchise granted by the language quoted first above from Ordinance No. 491. In other words, it is immaterial whether we have for consideration two contracts or one contract modified by the acceptance of the later ordinance.

It is now settled beyond controversy that a public utility
**[3]**   cannot be compelled to operate its entire business, or a
branch of its business, at a loss in the absence of a statute or
contract requiring it to do so. (*Brooks-Scanlon Co.* v. *Rail-
road Commission,* 251 U. S. 396, 64 L. Ed. 323, 40 Sup. Ct. Rep.
183, P. U. R. 1920C, 579; *Bullock* v. *Florida etc.,* 254 U. S. 513,
**[4, 5]**   65 L. Ed. ——, 41 Sup. Ct. Rep. ——.)   It is equally
well settled that a grant of a franchise and its acceptance
constitute a contract (*State ex rel. Billings* v. *Billings Gas Co.,*
55 Mont. 102, 173 Pac. 799), and it is the contention of the city
that it has a contract with the railway company, evidenced by
the franchise under which the Kenwood line was constructed
and has since been operated, which imposes upon the grantee
the obligation to operate the line for the entire term of the
franchise irrespective of the question of loss.   In a qualified
sense this contention may be granted in the first instance; but
it does not follow that the city is entitled to a permanent
injunction.   Questions concerning the rights which a city may
acquire in its proprietary capacity are not here involved.   The
grant of a franchise is distinctly an act of government—the
parting of a prerogative belonging to the supreme govern-
mental authority (26 C. J. 1013), and under our system that
authority is lodged in the legislative department. (*California*
v. *Central Pac. R. Co.,* 127 U. S. 1, 32 L. Ed. 150, 8 Sup. Ct.
Rep. 1073.)   The distinction between a franchise to operate a
street railway system and municipal contracts for street light-
ing or water service is pointed out in *State* v. *Des Moines City
Ry. Co.,* 159 Iowa, 259, 140 N. W. 437.   A city is but a po-
litical subdivision of the state for governmental purposes owing
its very existence to the legislative will and capable of exer-
cising only such powers as are granted either directly or by
necessary implication. (*City of Helena* v. *Kent,* 32 Mont.
279, 4 Ann. Cas. 235, 80 Pac. 258.)   Primarily, the power to
grant a franchise rests exclusively in the legislature (*State* v.
*Town of Monroe,* 40 Wash. 545, 82 Pac. 888; 26 C. J. 1024),

and though it may be doubted whether such power can be delegated, it is recognized generally that a franchise may be derived from the state indirectly through the agency which it may designate for that purpose (*Western Union Tel. Co.* v. *Hurlburt*, 83 Or. 633, 163 Pac. 1170; *State* v. *East Fifth St. Ry. Co.*, 140 Mo. 539, 62 Am. St. Rep. 742, 38 L. R. A. 218, 41 S. W. 955; *Skaneateles Water Works Co.* v. *Village of Skaneateles*, 161 N. Y. 154, 46 L. R. A. 687, 55 N. E. 562), and whenever a city assumes to grant a franchise, it acts merely as the agent of the state, and this is true in this jurisdiction, notwithstanding section 12, Article XV, of our Constitution provides: "No street or other railroad shall be constructed within any city or town without the consent of the local authorities having control of the street or highway proposed to be occupied by such street or other railroad." Our constitutional provisions are limitations upon, and not grants of, power, and generally they are limitations upon legislative action. Section 12 does not grant any right or power to a city or town. In the absence of that restriction, the legislature could grant a franchise directly to a street railway company to occupy and use a city's streets upon such terms as the lawmakers saw fit to exact, and that, too, without consulting the city authorities and in utter disregard of their expressed opposition. The presence of that provision in our Constitution does not modify the principle that the grant of a franchise proceeds from the legislature. (*New York City* v. *Bryan*, 196 N. Y. 158, 89 N. E. 467.) It only provides that a grant from the legislature shall not be effective without the consent of the local authorities, but it does not withhold from the legislature the power to say upon what terms the franchise shall be enjoyed. (*City of Denver* v. *Mercantile Trust Co.*, 201 Fed. 790, 120 C. C. A. 100.)

If, then, the right of the city to grant this franchise was subject to legislative restriction, as we hold that it was, the city cannot remove such right from the power of state regula-

tion and control by merely designating the accepted franchise a contract, for the contract carries with it all the infirmities of the subject matter. (*Hudson County Water Co.* v. *Mc-Carter*, 209 U. S. 349, 14 Ann. Cas. 560, 52 L. Ed. 828, 28 Sup. Ct. Rep. 529.)   Neither can the city insist that its contract with the railway company is inviolable, protected by the contract clause of the federal Constitution or by section 11, Article III of our state Constitution.   Speaking generally, a municipal corporation does not stand in a position to assert as against the state the benefit of the constitutional provision against the impairment of the obligation of contracts. (*New Orleans* v. *New Orleans Water Works Co.*, 142 U. S. 79, 35 L. Ed. 943, 12 Sup. Ct. Rep. 142), although the state may preclude itself from exercising its reserve power by authorizing the municipality to contract with a public utility for a given service for a definite period.   Since, however, the effect of such a grant of authority to the city is to extinguish *pro tanto* a governmental power of first importance, the courts will not indulge the presumption that such surrender of power has been made unless the legislative intention is expressed in clear and unmistakable language or is necessarily implied from the powers expressly granted, and all doubts will be resolved in favor of the continuance of the power in the state.   (*State ex rel. Billings* v. *Billings Gas Co.*, above.)   A general statute conferring upon the city the authority to regulate public utilities will not be construed to empower the municipality to make contracts inviolable as against the state.   This doctrine has been invoked most frequently in rate-making cases, but upon principle it applies equally to other matters of regulation and control.   For an elaborate discussion of the rule, reference is made to the notes in 3 A. L. R. 730, where the numerous decided cases are cited and analyzed.

Counsel for the city direct our attention to *Quinby* v. *Public Service Commission*, 223 N. Y. 244, 3 A. L. R. 685, 119 N. E. 433; *Interurban Ry. etc. Co.* v. *Public Utilities Commission*,

98 Ohio St. 287, 3 A. L. R. 696, 120 N. E. 831, and *Cincinnati*
v. *Public Utilities Commission,* 98 Ohio St. 320, 3 A. L. R.
705, 121 N. E. 688, and they might have included *Virginia*
*Western P. Co.* v. *City of Clifton Forge,* 125 Va. 469, 9
A. L. R. 1148, 99 S. E. 723, all to the effect that the state,
through its Public Utilities Commission, may not change an
existing rate agreed upon between the public utility and the
municipality. The Ohio and Virginia courts ground their
opinions upon express provisions of the Constitution or statute
deemed controlling and acknowledge that the overwhelming
weight of authority sustains the view heretofore expressed;
while the New York court held only that the legislature had
not conferred upon the commission the power it sought to
exercise. The *Quinby Case* was, however, greatly modified, if
not overruled, in *People ex rel. South Glens Falls* v. *New*
*York Public Service Commission,* 225 N. Y. 216, 121 N. E.
777. Our statute, section 5039, Revised Codes of 1921, confers
upon a municipality power: ''To license and authorize the
construction and operation of street railroads and require
them to conform to the grade of the street as the same are or
may be established. * * * To grant the right of way through
the streets, avenues and other property of a city or town for
the purpose of street or other railroads and to regulate the
running and management of the same, and compel the owner
of such street or other railroads to keep the street in repair
when occupied by such street or other railroad. * * * To make
any and all contracts necessary to carry into effect the powers
granted by this title and to provide for the manner of exe-
cuting the same.'' Whether, in view of the provisions of
section 5, Article XV, of our Constitution, the legislative
assembly could delegate to a municipality authority to grant
a franchise to a street railway company the acceptance of
which would constitute a contract inviolable as against the
state, we need not stop to determine. For all purposes of
this appeal, it is sufficient to say that in our opinion it has

not attempted to do so. The only authority claimed by the city to compel the railway company to operate the Kenwood line during the entire period covered by the franchise rests in contract which, as we have determined, is not inviolable as against the state. It follows that the state may, through the Public Service Commission, relieve the railway company of the burden thus imposed (*City of Worcester* v. *Worcester Consolidated Street R. Co.,* 196 U. S. 539, 49 L. Ed. 591, 25 Sup. Ct. Rep. 327), and this conclusion does not impinge upon the right of the inhabitants of a municipality to a measure of self-government with respect to matters of purely local concern. The streets of a city are public highways (sec. 1612, [6] Rev. Codes 1921), and though the city is charged with the duty of keeping them in repair and the cost of maintenance is imposed upon the city, nevertheless jurisdiction over them is primarily in the state, and the city acts with respect to them subject to the general laws of the state. (*State ex rel. Rocky Mt. etc. Telephone Co.* v. *Red Lodge,* 30 Mont. 338, 76 Pac. 758.)

Our attention is directed by counsel for the city to pro-
[7] visions contained in Ordinance No. 619, either directly or by appropriate reference to the general ordinance of the city, and particular reference is made to the provisions requiring the railway company to pave the streets between its tracks and to sell commutation tickets, and to the provision that the cars shall be required to make a minimum number of trips daily between designated hours but the rights referred to do not constitute property rights beyond legislative control. (*City of Worcester* v. *Worcester Consolidated Street R. Co.,* above; *Dubuque Elec. Co.* v. *Dubuque,* 260 Fed. 353, 171 C. C. A. 219, 10 A. L. R. 495.)

It is our conclusion that the state may, through the Public
[8] Service Commission, relieve the railway company of its contract obligation to operate the Kenwood line, or a part of it, during the entire period covered by the franchise, but that

until the state has acted in the premises, the obligation is a continuing one which the city is entitled to have discharged. This being a suit in equity, jurisdiction over the subject matter should be retained until final disposition upon the merits.

It is ordered that the judgment be reversed and the cause remanded to the district court, with directions to grant an interlocutory injunction restraining the defendant, its agents, servants and employees, from discontinuing the portion of the Kenwood line in question until such time (if at all) as the Public Service Commission shall grant authority for such discontinuance, and to retain jurisdiction over the controversy for a reasonable time until application is made to the commission and action had thereon.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY, ASSOCIATE JUSTICES COOPER and GALEN, and HONORABLE H. H. EWING, District Judge, sitting in place of MR. JUSTICE REYNOLDS, disqualified, concur.

Rehearing denied June 5, 1922.