[Civ. No. 2353.   Third Appellate District.—September 24, 1921.]

THE NAPA UNION HIGH SCHOOL DISTRICT OF NAPA COUNTY, Petitioner, v. THE BOARD OF SUPERVISORS OF NAPA COUNTY et al., Respondents.

[1] MANDAMUS—DISCRETION—WHEN EXERCISABLE.—The writ of *mandamus* is not a writ of right granted as of course but is allowed only in the sound discretion of the court, and such discretion will never be exercised unless some just or useful purpose will be subserved thereby.

[2] SCHOOL LAW — ISSUANCE OF BONDS — MANDAMUS — SCOPE OF INQUIRY.—In view of the fact that it is the duty of a board of supervisors to issue bonds of a high school district if the returns of the election are regular and no vital infirmity appears upon the face of the proceedings, and the party who desires to question the validity of the election for reasons which do not appear from the record must seek his remedy in an equitable action to prevent the sale of the bonds, the court's inquiry upon an application for a writ of *mandamus* to compel the board to issue the bonds must be confined to the same limits, that is, to an inspection of the

record, and questions of fraud and illegal voting cannot be considered.

[3] ID.—DUTY OF SUPERVISORS—ISSUANCE OF BONDS—PROPER CERTIFICATION OF ELECTION RETURNS.—Under section 1746 of the Political Code, it is the duty of a board of supervisors to issue high school district bonds if the returns of the bond election are properly certified to the board.

[4] ID.—TIMES OF PAYMENT OF INTEREST ON BONDS—STATEMENT ON ELECTION BALLOT.—The law relating to high school district bond elections does not require that the proposition as printed on the ballot should show the times for the payment of interest, but such fact should appear in the notices of election to be posted and published.

[5] ID.—HIGH SCHOOL BOND ELECTION—COMPLETION OF RETURNS—AUTHORITY OF HIGH SCHOOL BOARD.—A high school board has authority under section 1281a of the Political Code to require bond election officers to complete their returns.

PROCEEDINGS on application for a Writ of Mandate to require the issuance of school bonds.   Granted.

The facts are stated in the opinion of the court.

Clarence N. Riggins for Petitioner.

Henry C. Gesford for Respondents.

BURNETT, J.—An application was made in the first instance to this court for a writ of mandate to require respondents to issue the bonds of said High School District in the sum of three hundred thousand dollars "for the purpose of purchasing a suitable high school lot, building thereon a new high school building, supplying said high school building with furniture and necessary apparatus and improving the high school grounds." In response to the alternative writ respondents have filed herein a demurrer to the petition, and an answer in which is challenged on various grounds the legality of the bond election, and in further justification of their course in declining to issue said bonds respondents allege that they were advised by the district attorney of said county to sustain the objection to any action on their part made by certain taxpayers who appeared before them, and "to proceed no further in the matter of said high school bonds at that

time." In support of this last allegation they attach a transcript of the notes taken by the official reporter, from which we quote the suggestion of the district attorney to the supervisors as follows: "We have no desire to issue bonds that are illegal or which were not legally voted upon. We believe the election was legal and, in order to get quick determination, I have a plan to suggest. We want the case decided, and if it is perfectly agreeable to you now to indicate how the board of trustees of the Napa School District and myself feel about this proposition, I will say that it will be perfectly agreeable to us if the board of supervisors will sustain Judge Gesford's objection and refuse to pass or issue the bonds. We are not consenting now that the election was held in an illegal manner, but just simply suggesting this as a simple way of expediting matters. Then I will *mandamus* the board, and the district court of appeal or the supreme court will compel the issuance of these bonds and will pass upon the validity of these proceedings. By that method I can get the matter quickly disposed of." This was agreed to, and by consent the board of supervisors sustained the objection and declined to proceed further. By reason of this agreement we might be justified in refusing the writ, as the courts will not ordinarily hear a party when he asks to have undone an act which he advised to be done. We are satisfied, however, that the parties acted in good faith with a laudable desire to have the validity of the bond election determined as speedily and economically as possible, and we are not disposed to dismiss them without considering other points made in the briefs.

[1] It is conceded that the writ of *mandamus* is not a writ of right, granted as of course, but is allowed only in the sound discretion of the court. This discretion will never be exercised in favor of a party unless some just or useful purpose will be answered thereby, and it must not only serve some just and useful purpose, but it must be necessary to secure the ends of justice. Many decisions in support of the foregoing propositions are cited by respondents, but the question is hardly open to dispute.

[2] With this general statement of the rule, indeed, the authorities are practically unanimous, but it is sometimes difficult to determine the scope of the proper inquiry as to

the regularity of the proceedings which are sought to be reviewed in the application for the writ. However, in a case like this, the duty of the supervisors being purely ministerial, if the returns of the high school board are regular and no vital infirmity appears upon the face of the proceedings, the bonds must be issued and the party who desires to question the validity of the election for reasons which do not appear from the record must seek his remedy in an equitable action to prevent the sale of the bonds, wherein all issues that may affect the integrity of the declared result may be tried and determined. (*Gibson* v. *Board of Supervisors,* 80 Cal. 359, [22 Pac. 225].) If the inquiry of the board of supervisors can extend no further than we have indicated, and it thereby appears to be their duty to issue the bonds, it necessarily follows that the court's inquiry upon an application for a writ to compel them to proceed must be confined to the same limits, that is, to an inspection of the record. Otherwise, the court might determine that it is not the duty of the board to do what the law plainly requires of them. Necessarily the board exercises some discretion, and their judgment is called into play in the determination of whether the prior proceedings have been regular, but, properly speaking, that does not involve a judicial function. [3] The particular record upon which the action of the supervisors is based is the certificate of the high school board, and when that is presented to them in proper form, "thereupon said board of supervisors shall be and it is hereby authorized and directed to issue the bonds of such high school district" (Sec. 1746, Pol. Code). The duty of the supervisors is similar to that of a canvassing board, and it is well settled that the latter is bound by the returns (15 Cyc. 379, 381, 384, 386, 387; 9 R. C. L. 1110–1113; 20 C. J. 200). It is sufficient to quote from the first of these as follows: "County canvassers have the *quasi*-judicial power to determine whether the papers transmitted to them are genuine election returns signed by the duly appointed officers in the various precincts; but beyond this their duties are purely ministerial, involving simply the labor of counting the votes returned to them and determining the number of votes received by each candidate or proposition. They are governed by the returns made by the inspectors of

the several precincts as to the number of votes cast and for whom cast, and if these returns be in due form they have not the power to go behind them and ascertain the qualification of voters or otherwise to inquire into the regularity of the election. They must simply add together the votes of the several precincts cast for each candidate as the same are shown in the certified returns and declare the result. . . . And if they attempt to travel beyond the limit of their ministerial duties, and enter upon a judicial investigation of the regularity of the election, they may be compelled by *mandamus* to canvass the returns as they have them before them." It is further stated by these authorities that if the canvassers neglect or refuse to canvass the returns sent to them, *mandamus* will lie to compel them to do so, but that upon an application for a writ of mandate the court is not authorized to go beyond the returns and consider questions touching the legality of the election. A multitude of cases could be cited to the same effect, but we refer only to *Leary* v. *Jones,* 51 Colo. 185, [116 Pac. 130], and *Pacheco* v. *Beck,* 52 Cal. 3. In the former the subject received careful consideration by the supreme court of Colorado. Therein pertinent comment is made as to *State* v. *Stevens,* 23 Kan. 456, [33 Am. Rep. 175], upon which respondents relied. In the Kansas case, indeed, the invalidity of the election appeared upon the face of the returns, since it was a matter of common knowledge that "a monstrous fraud had been perpetrated" in the return of a total vote of 2,947, when there were only about 800 legal voters in the county.

In the Pacheco case, *supra,* the writ was directed to the Secretary of State to compel him to estimate the votes given for members of Congress, as shown in the records of the counties transmitted to him by the clerks, and to issue a certificate to the person having the highest number of votes. Therein it was said: "The law does not vest him with authority to inquire whether the board of supervisors correctly canvassed the returns from the several precincts, or whether the record correctly stated the result of the canvass, as made or declared, or whether the record was properly made up; nor to investigate any question relating to the proceedings which were had prior to the making of the certified abstract. That document, being in

the form presented by law, is the only one upon which he is required or authorized to act in his official capacity in estimating the vote of the district."

We conclude that in this proceeding the questions of fraud and illegal voting that are presented by the answer of respondents cannot be considered, and that our attention must be limited to those matters that appear upon the face of the returns.

[4] It is claimed that, within this limitation, we should hold that the election was invalid for the reason "that the proposition as printed on the ballot does not show that the interest was to be paid semi-annually." The argument is that thereby the voter may have been misled into thinking that the interest was not to be paid until the maturity of the bonds and hence would be more inclined to vote for them. We do not attach such importance to this circumstance. It is only a summary of the provisions, as is customary, that was printed on the ballot, and the voters are presumed to have understood the practice in that respect. The law does not require the time for the payment of the interest to be printed upon the ballot, but it does provide that it shall appear in the notices of the election to be posted and published. The law was observed in giving such notices, and we must assume that the voters were apprised of their contents. It appears, also, that this detail appeared in the resolution calling the election. The case of *Hollywood Union High School Dist.* v. *Keyes*, 12 Cal. App. 172, [107 Pac. 129], is not in point, as therein the time of payment was not stated in the notice, as is required by section 1745 of the Political Code.

This objection, as suggested by petitioner, should not prevail unless unavoidable, for the reason that it would invalidate millions of dollars' worth of bonds that have been sold in the various counties of the state. However, we do not consider the objection as serious although, manifestly, it would be the better practice to publish on the ballot the time of payment of the interest.

[5] Likewise, we see no particular merit in the objection to the action of the high school board in requiring the election officers to complete their returns. This was authorized by section 1281a of the Political Code, which is applicable to high school elections. (*Bernardo* v. *Rue*, 26 Cal.

App. 108, [146 Pac. 79].) Respondents are apparently in error in the statement that "the tally list and poll list of every precinct in the high school district was changed, corrected, and reauthenticated." The petition shows: "Said election officers thereupon made and signed amended certificates to the poll lists and amended certificates to the tally list° of the returns of said election in their respective precincts already filed by them with the board, thereby correcting and completing their returns and the authentication thereof so as to truly show the votes that were cast in their respective precincts at such election for and against each proposition voted upon thereat."

We think, also, that the record shows a sufficient compliance by the high school board with the law requiring them to cause an entry in their minutes of the fact that two-thirds of the votes were cast in favor of the bonds and to certify to the board of supervisors "all the proceedings had in the premises." (Sec. 1746, Pol. Code.)

Indeed, without further specification, we may state that by an inspection of the record we discover nothing to justify the supervisors in declining to issue the bonds.

We may add that it seems to us that none of the special defenses set up in the answer possesses substantial merit except the allegations of fraud and illegal voting contained in the seventh, eighth, and ninth counts. In other words, the other objections do not appear material. Still, we do not desire to foreclose inquiry as to any of them in a proper proceeding.

As far as any delay is concerned in the final determination of the merits of the controversy, it would probably be as great if the issues were tried in this proceeding as in the usual and regular course. As we view the matter, it would be of no advantage for Mr. Graves, a taxpayer, to intervene herein. He will have an opportunity to be heard if a proper suit is brought to test the validity of the election.

We think the demurrer to the petition should be overruled, the demurrer to the answer sustained, and a peremptory writ issue requiring the supervisors to issue said bonds. It is so ordered.

Hart, J., and Finch, P. J., concurred.