[S. F. No. 10940. In Bank.—December 26, 1923.]

ALLEN H. WRIGHT, City Clerk, etc., et al., Petitioners, v. FRANK C. JORDAN, Secretary of State, Respondent; DORA V. DRUMHILLER et al., Interveners.

[1] MUNICIPAL CONSOLIDATION ACT—FILING OF DOCUMENTS—DUTY OF SECRETARY OF STATE—UNAFFECTED BY PENDING PROCEEDINGS.—The ministerial duty of the Secretary of State to file in his office, as required by sections 4 and 5 of the Municipal Consolidation Act of 1913, as amended in 1915 and 1917, documents purporting to set forth the official record of the canvass of the returns of elections held in two cities upon the question of a proposed consolidation of said cities, together with a statement by a city clerk setting forth the date of each election in said cities and the time and result of the canvass of the returns thereof, and showing that each such election had resulted in a majority vote of the qualified electors of each city in favor of such consolidation, cannot be affected or interfered with by the fact that other interested parties have seen fit to institute proceedings in the several courts of the state (to none of which proceedings the Secretary of State is a party) calling into question the validity of the elections to which such documents and statement relate, since the matters which are presented for litigation in such proceedings are matters with which, in his strictly ministerial capacity, he is neither called upon nor qualified to deal.

[2] ID.—INJUNCTION.—In view of the provisions of section 526 of the Code of Civil Procedure that "an injunction cannot be granted . . . to prevent the execution of a public statute by officers of the law for the public benefit," an injunction will not lie to restrain the Secretary of State from filing the documents and statement conforming to sections 4 and 5 of the Municipal Consolidation Act.

[3] CONSTITUTIONAL LAW—INITIATIVE AMENDMENT—METHOD OF PRESENTING TO PEOPLE—LIMITATION—STATUTORY CONSTRUCTION.—The limitation, such as that contained in section 1 of article XVIII of the constitution and providing that "should more amendments than one be submitted at the same election they shall be so prepared and distinguished by numbers or otherwise that each can be voted on separately," has not been embodied in the provisions of the amendment to section 1 of article IV of the constitution, relating to the method of exercising the power of amending the constitution by initiative measures, and the limitation contained in said section 1 of article XVIII cannot be imported into said amendment to section 1 of article IV.

[4] STATUTORY CONSTRUCTION — CONSTITUTIONAL LAW. — Certain provisions of a constitution or of a statute may be repealed or abrogated by implication arising out of the adoption of changes in other portions thereof, rendering obnoxious or ineffective the provisions thereof not expressly repealed.

[5] CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—STATUTORY CONSTRUCTION.—The interpretation sought to be placed upon subdivision 7 of section 8½ of article XI of the constitution, that such subdivision as amended in 1914 was not intended by the proponents thereof to provide generally for the annexation of unincorporated territory to cities or for the consolidation of contiguous municipalities, but only to provide for the inclusion of such powers in the charters of such municipalities as might be formed under the provisions of section 8 of article XI of the constitution, of which said section 8½ thereof is claimed to be an extension, cannot be adopted in view of the particular language of said subdivision by which its provision as to the assumption of bonded indebtedness by either of the cities so consolidated by a majority vote of the electors voting thereon is given application to all annexations or consolidations whether effected "under this section or any other section of the constitution."

[6] MUNICIPAL CONSOLIDATION ACT — FILING OF DOCUMENTS BY SECRETARY OF STATE—MANDAMUS—CONSTITUTIONAL LAW—COLLATERAL ATTACK.—The Secretary of State cannot, in a proceeding in *mandamus* to compel him to file in his office, as required by sections 4 and 5 of the Municipal Consolidation Act, certain documents and statement relating to elections concerning the consolidation of two cities, attack the details of the method by which subdivision 7 of section 8½ of article XI of the constitution was adopted, since such an attack amounts merely to a collateral attack upon an amendment to the constitution which has been adopted by a majority vote of the people, who must be assumed to have voted intelligently upon an amendment to their organic law, the whole text of which was supplied each of them prior to the election and which they must be assumed to have duly considered, regardless of any insufficient recitals in the instructions to voters or the arguments *pro* and *con* of its advocates or opponents accompanying the text of the proposed measure.

[7] ID.—EXTENT OF RIGHTS OF INTERVENERS.—In such a proceeding, where parties were permitted to intervene to the extent and for the purpose of sustaining or opposing the respective contentions of the petitioners and respondent, their rights as interveners go no further, since they cannot be heard to broaden the scope or function of such proceeding by urging claims or contentions which have their proper forum elsewhere, and in which forum they are already embattled.

192 Cal.—45

PROCEEDING in Mandamus to compel Secretary of State to file certain documents and statement in accordance with Municipal Consolidation Act. Writ granted.

The facts are stated in the opinion of the court.

S. J. Higgins for Petitioners.

Leon French, Crouch & Sanders, Sloane & Sloane and F. G. Blood for Respondent.

Jesse George for Interveners.

RICHARDS, J., *pro tem.*—The petitioner herein, Allen H. Wright, alleging himself to be the city clerk of the city of San Diego, also petitioner herein, applies for a writ of mandate to compel the respondent herein, as Secretary of State of the state of California, to forthwith file in his office certain documents purporting to set forth the official record of the canvass of the returns of an election held in the city of San Diego upon the question of a proposed consolidation of the said city of San Diego with the city of East San Diego, together with the official record of the canvass of the returns of an election held in the city of East San Diego upon the same question, together with a statement prepared and duly certified by the said city clerk of the city of San Diego and by him transmitted and delivered to said respondent, setting forth the date of each such election and the time and result of the canvass of the returns thereof and showing that each such election had resulted in a majority vote of the qualified electors of each such municipal corporation in favor of such consolidation. The petitioner further shows that the respondent has refused, and still refuses, to file such documents and statement in violation of his duty as a ministerial officer of the state of California so to do under the provisions of sections 4 and 5 of the statutes of 1913, as amended in 1915 and 1917, known as the Municipal Consolidation Act.

The respondent, by his return to the alternative writ of mandate issued herein, admits the averments of said petition as to the official position of the petitioner and as to the due incorporation of the cities of San Diego and East San Diego and also as to the fact that elections were held in the

cities of San Diego and East San Diego, respectively, as set forth in said petition; but the respondent denies that said elections, or either of them, or any of the proceedings taken and had in relation thereto, are valid, for the alleged reason that the Municipal Consolidation Act of 1915, under which said elections were held, is violative of the constitution of the state of California in that it permits the assumption of a bonded indebtedness in an annexation proceeding by a mere majority vote, and for the further reason that the petition for said election was insufficient to confer jurisdiction for the calling of such election in that it did not contain the signatures of one-fourth of the qualified electors residing within the said city of San Diego. The respondent further sets forth in his return to said writ certain legal proceedings which have been commenced and are still pending in the superior court of the state of California in and for the county of San Diego and also certain legal proceedings which have been commenced and are still pending in the district court of appeal of the state of California in and for the second appellate district thereof, as additional reasons why he should not comply with the petitioners' demand; and in that behalf alleges that there has been commenced and is now pending in the said superior court in and for the county of San Diego in an action in *quo warranto* brought by the people of the state of California upon the relation of one Charles H. Harris against the said city of San Diego, wherein the plaintiff therein seeks to have the special elections described in the petition herein and all proceedings taken and had in connection therewith declared illegal and void, and that the pendency of said action, involving, as it is alleged to do, the exact issues raised in the petition herein, is a bar to this proceeding and to the issuance of a writ of mandate herein. The respondent herein further avers that in said *quo warranto* proceeding an injunction *pendente lite* has been issued by said superior court and is still in full force and effect, restraining the city of San Diego and the city clerk thereof and each and every other agent of the said city of San Diego from assuming in any manner any jurisdiction over the city of East San Diego and from interfering with or obstructing in any manner the present or constituted officers and employees of said city of East San Diego in the discharge of their respective func-

tions until the final determination of said *quo warranto* proceeding; and that by his petition herein the petitioner is seeking to compel the respondent herein to knowingly assist and co-operate with the said petitioners in a willful violation of said restraining order and of the respondent's official duty to regard injunctions issued by a court of competent jurisdiction, in this, that if respondent accepts and files the certificate of the result of said election such act by respondent will result *ipso facto* in conferring jurisdiction upon the officials of the city of San Diego to take over the said city of East San Diego and deprive the present officers thereof of their offices and authority and destroy the corporate existence of the said city of East San Diego; and that for this reason this writ should be denied. The respondent also sets forth the fact that there has been commenced and is now pending in the district court of appeal of the state of California in and for the second district thereof an application for a writ of mandate in a proceeding entitled *Drumhiller et al.* v. *City of San Diego,* which is an application for a writ of mandate directing the city clerk of the city of San Diego, petitioner herein, to file his certificate as set forth in his petition herein, which proceeding involves the same issues as those presented in this proceeding and affords to the petitioner herein plain, speedy and adequate relief; and that the pendency of said cause constitutes a bar to the maintenance of this proceeding and to the issuance of a writ of mandate herein. The respondent further avers that the issuance of said writ by the said district court of appeal has been restrained by an alternative writ of prohibition issued out of this court, returnable on the eighth day of January, 1924, and that if upon said return day said alternative writ of prohibition is dismissed the petitioners herein will have a sufficient, plain, speedy, and adequate remedy in the said proceeding already pending in the said district court of appeal. Wherefore the respondent prays that the petitioners take nothing by the application herein.

Upon the hearing upon the alternative writ of mandate issued herein certain other parties, including certain electors, property owners and taxpayers of the said city of East San Diego, and also including the people of the state of California through the attorney-general as plaintiffs in the *quo warranto* proceedings above referred to, applied for leave

to intervene in this proceeding and to set forth in their respective complaints of intervention herein the matters set forth and alleged in the several proceedings above adverted to as pending in the superior court of the county of San Diego and in the district court of appeal. They were permitted so to do; and the matter in its several phases as thus presented was, upon the return day of said alternative writ, argued and submitted to this court for decision, at which time certain considerations were urged upon this court as reasons for a speedy determination of the main issues presented herein, which considerations the court deems adequate.

[1] As to the matters urged by the respondent herein relating to the existence and pendency of certain proceedings in this court and in the district court of appeal and in the superior court of the county of San Diego, we are of the opinion that the existence and pendency of such proceedings, to none of which the respondent herein is a party, do not, and neither of them does, furnish to this respondent in themselves an adequate or legal excuse for his failure and refusal to perform his ministerial duty in the matter of the filing in his office as Secretary of State the documents and statement officially presented to him for such filing by the petitioner Wright herein, as city clerk of the city of San Diego. It is admitted by the respondent herein that the documents and statement of the said city clerk conform to the requirements of sections 4 and 5 of the Municipal Consolidation Act, under which they are offered for filing. This being so, his ministerial duty to file the same cannot be affected or interfered with by the fact that other interested parties have seen fit to institute proceedings in the several courts of this state calling into question the validity of the election in the two municipalities to which such documents and statement relate, since the matters which are presented for litigation in such proceedings are matters with which, in his strictly ministerial capacity, he is neither called upon nor qualified to deal. In the early case of *Pacheco* v. *Beck,* 52 Cal. 3, this precise question was determined, wherein it was held that when a board of supervisors has canvassed the returns of an election and when a record thereof is made and entered upon its minutes, and has been duly authenticated and transmitted by the clerk of the board

to the Secretary of State, it is the duty of that official, upon the face of such record, to estimate the votes given to members of Congress as shown thereby, and that he cannot go behind such certified record in making such estimate or issuing his certificates of election thereon and that his duty to issue such certificates can be compelled by writ of mandate. This decision has been approved by this court and followed by the district court of appeal in the cases of *People* v. *Stewart,* 132 Cal. 283 [64 Pac. 285], and *Napa Union High School Dist.* v. *Board of Supervisors,* 54 Cal. App. 326 [201 Pac. 948]. In the case of *O. & V. R. R. Co.* v. *Plumas County,* 37 Cal. 354, it was decided that the pendency of proceedings in *quo warranto* was no defense to a proceeding in mandamus to compel the performance of a ministerial act.

[2] As to the preliminary injunction issued by the superior court in said *quo warranto* proceeding, it appears from the record herein that said injunction does not purport by its terms or scope to enjoin or otherwise affect the action of the respondent herein in the matter of the filing of the record of said election, but even if it did purport so to do and if the said respondent had been a party to said proceeding it is clear that as to him and his official action such injunction would have no force and effect in view of the provisions of section 526 of the Code of Civil Procedure, which expressly declares that "an injunction cannot be granted . . . to prevent the execution of a public statute by officers of the law for the public benefit." Section 3423 of the Civil Code contains a similar provision. This court has given precise application to these provisions of the codes in the cases of *People ex rel.* v. *Board of Supervisors,* 75 Cal. 179 [16 Pac. 776], wherein it was held that an injunction would not lie to restrain the board of supervisors of a county from giving notice as required by law of the result of an election on the ground that the election was illegally ordered by the board by reason of their want of jurisdiction. A like application of these provisions of the codes was given in *Reclamation District etc.* v. *Superior Court, etc.,* 171 Cal. 672 [154 Pac. 845].

The respondent makes the final contention that he should not be required to comply with the demand of the petitioner herein for the reason that the provision of the act of the

legislature of 1915 (Stats. 1915, p. 311) is unconstitutional. This contention has its foundation in the respondent's further contention that the provisions of subdivision 7 of section 8½ of article XI of the constitution, upon which the provisions of said statute are based, is itself unconstitutional, for the reason that it was not adopted with the formalities or in the manner required by the provisions of section 1 of article XVIII of the constitution and is, therefore, itself inoperative and void. Section 1 of article XVIII of the constitution relates to amendments to the constitution and is one of its original articles as adopted in 1879. At the time of its adoption, and for many years thereafter, it provided the only method for making amendments to the constitution, viz.: that of initiating such proposed amendments in the legislature and when favorably acted upon by two-thirds of the members elected to both houses such proposed amendments were to be submitted to the vote of the people. The article provided that "should more amendments than one be submitted at the same election they shall be so prepared and distinguished by numbers or otherwise that each can be voted on separately." But the people of the state of California, in the year 1911, adopted an amendment to section 1 of article IV of the constitution whereby they reserved to themselves the power to propose and adopt or reject amendments to the constitution "independent of the legislature" and by "initiative measure to be submitted directly to the electors." The amendment to article IV of the constitution provides an elaborate scheme for the formulation and presentation to the electors of initiative amendments to the constitution, wherein no such limitation as is embodied in the provisions of section 1 of article XVIII of the constitution can be found. Whether such a limitation upon the reserved power of the people to formulate their own amendments to the constitution and to present the same to the electors separately or in the form of a comprehensive measure effecting several independent changes in the constitution as it then existed would have been wise or prudent it is not for this court to declare. [3] It is sufficient to show that no such limitation upon the method of exercising the power of amending the constitution by initiative measures has been embodied in the provisions of the initiative amendment adopted in 1911, and that we cannot import into the

same the provisions of article XVIII of the constitution relating to amendments to the constitution through their initiation in the legislature and submission by that method to popular vote.

In the light of this conclusion we approach the question as to the constitutionality of subdivision 7 of section 8½ of article XI of the constitution, adopted as an initiative measure by the people under their foregoing reserve of power embraced in the amendment to section 1 of article IV thereof. Subdivision 7 of section 8½ of article XI of the constitution, as thus proposed and adopted by the initiative method, reads as follows:

"In all cases of annexation of unincorporated territory to an incorporated city or the consolidation of two or more incorporated cities, assumption of an existing bonded indebtedness by such unincorporated territory or by either of the cities so consolidated may be made by a majority vote of the qualified electors voting thereon in the territory or city which shall assume an existing bonded indebtedness. This provision shall apply whether annexation or consolidation is effected under this section or any other section of this Constitution and the provisions of Section 18 of this Article shall not be a prohibition thereof."

It is to be noted that the foregoing subdivision of said section of said article XI of the constitution as proposed to be amended by this initiative measure is but part of a comprehensive and elaborate change to be made in the constitution with regard to the organization, government and enlargement of cities by the incorporation therein of additional territory, by the consolidation of adjacent municipalities, or by the formation of city and county governments. It is true that the amendment as thus presented does effectuate changes in several already existing articles, sections, and clauses of the constitution, and that these are not presented in the form of separate amendments to be voted upon by the electors; but as we have already seen, this is not required either by the language or intendments of section 1 of article IV of the constitution as amended in 1911. But independent of this conclusion we are not at all satisfied that under a liberal interpretation of section 1 of article XVIII of the constitution the legislature might not itself have proposed and presented to the people for their adoption in the form of a single amend-

ment to the constitution the precise measure embodied in this initiative amendment, even though its effect might be to change or abrogate other portions of the constitution not embodied in the particular article thereof thus sought to be amended. [4] Such an interpretation of said article is in entire harmony with the well-established principle that certain provisions of a constitution or of a statute may be repealed or abrogated by implication arising out of the adoption of changes in other portions thereof, rendering obnoxious or ineffective the provisions thereof not expressly repealed. [5] The respondent further urges that subdivision 7 of section 8½ of article XI of the constitution, as the latter was amended in 1914, was not intended by the proponents thereof to provide generally for the annexation of unincorporated territory to cities or for the consolidation of contiguous municipalities, but only to provide for the inclusion of such powers in the charters of such municipalities as might be formed under the provisions of section 8 of article XI of the constitution, of which said section 8½ thereof is claimed to be an extension. We cannot adopt this narrow interpretation of said subdivision in said amendment to the constitution in view of the particular language of said subdivision by which its provision as to the assumption of bonded indebtedness by either of the cities so consolidated by a majority vote of the electors voting thereon is given application to all annexations or consolidations, whether effected "under this section or any other section of the constitution." [6] The criticism which the respondent makes as to the details of the method by which this amendment to the constitution was adopted constitutes matter which cannot be taken advantage of by him in this proceeding, since it amounts merely to a collateral attack upon an amendment to the constitution which has been adopted by a majority vote of the people, who must be assumed to have voted intelligently upon an amendment to their organic law, the whole text of which was supplied each of them prior to the election and which they must be assumed to have duly considered, regardless of any insufficient recitals in the instructions to voters or the arguments *pro* and *con* of its advocates or opponents accompanying the text of the proposed measure. We are of the opinion, therefore, that the contentions of the respondent herein as to the

unconstitutionality of the amendment to the constitution under which the act of the legislature was adopted, providing for the election, as to which it is the petitioners' demand that he file the required documents and certificate, are without merit.

We have thus considered the merits of the respondent's said contention without regard to the petitioners' insistence that the respondent is not entitled to urge the unconstitutionality of the constitutional amendment or of the particular statute under which he is required to act, in a *mandamus* proceeding, a point which we do not decide.

[7] As to the interveners herein it will suffice to say that while they were permitted to intervene to the extent and for the purpose of sustaining or opposing the respective contentions of the petitioners and respondent herein, their rights as interveners herein go no further, since they cannot be heard to broaden the scope or function of this special proceeding by urging claims or contentions which have their proper forum elsewhere, and in which forum they are already embattled. (*McNeil* v. *Morgan*, 157 Cal. 373–377 [108 Pac. 69].)

Let the writ issue as prayed for.

Myers, J., Kerrigan, J., Lawlor, J., Lennon, J., Seawell, J., and Wilbur, C. J., concurred.