REQUESTED BY: Scott Moore Nebraska Secretary of State
The final sentence of Art. XVI, § 1 of the Nebraska Constitution, which deals with amendments to that document, provides that, "[w]hen two or more [constitutional] amendments are submitted at the same election, they shall be so submitted as to enable the electors to vote on each amendment separately." Earlier, state Senator Ron Withem requested our opinion as to the application of the final sentence of Art. XVI, § 1 to a constitutional amendment which he contemplated introducing during the 1996 legislative session. Senator Withem indicated that his proposed amendment would attempt to address both the issue of property tax relief and the issue of equal educational opportunity. He then asked whether the Executive Board of the Nebraska Legislature, under Art. XVI, § 1, must prepare ballot language for such an amendment which would require that those issues be presented to the voters separately. In our Op. Att'y Gen. No. 95089 (November 21, 1995), we responded to Senator Withem by indicating that, in our view, two proposals to amend the Nebraska Constitution may be submitted to Nebraska voters as a single proposition on the ballot if they have a natural and necessary connection with one another, and if they are part of one general subject. We then stated that, in a general sense, "proposals related to property tax relief and equal educational opportunity do not have such a natural and necessary connection with one another as to make them part of one general subject."Id. at 4. As a result, we concluded that the proposals offered by Senator Withem should be set forth separately on the ballot.
In his earlier opinion request, Senator Withem also asked for our views as to whether constitutional amendments proposed for a vote of the people by initiative petition or referendum would also be subject to the requirements of Art. XVI, § 1 with respect to separate treatment on the ballot. We declined to respond to that opinion request presented by the Senator, as it did not relate to his duties as a legislator, but we pointed out that you might be able to pose that question to us as a part of your duties as Nebraska Secretary of State. As a result, you have now posed several questions to us concerning the issues discussed in Opinion No. 95089, the requirements of Art. XVI, § 1 and the initiative and referendum process.
 I. Application of the requirements of Art. XVI, § 1 for separate presentation of constitutional amendments on the ballot to constitutional amendments proposed by the initiative process.
 A. Article XVI, § 1 and the Initiative.
The initial question which you pose for our consideration is as follows:
 In your AO #95089 you suggest that constitutional amendments proposed by the Legislature that do not have a natural and necessary connection and are not part of one general subject should be set forth separately on the ballot. Does this same general principle apply to proposed constitutional amendments using the initiative process?
For the various reasons discussed at length below, we believe that the answer to that question is "yes."
The original Constitution of the State of Nebraska only made provision for amendment of that document by a Constitutional Convention process. Neb. Const. Art. IX, § 1 (1867). Subsequently, in the Constitution of 1875, changes were made so that the Legislature could propose constitutional amendments for a vote of the people. Neb. Const. Art. XV, § 1 (1875). The provision added in the 1875 Constitution for legislatively proposed amendments originated the requirement that separate constitutional amendments proposed by the Legislature must be submitted to the electorate so as to allow each amendment to be voted on separately. As a result, the requirement in the final sentence of Art. XVI, § 1 of our current Constitution at issue here has been in the Nebraska Constitution since 1875.
In contrast, the three provisions in our current Constitution dealing with the initiative and referendum rights of the people originated in amendments added to the Nebraska Constitution in 1912. Those provisions, which are now numbered as separate sections 2, 3 and 4 of Article III of the Nebraska Constitution, were originally amendments numbered as Sections 1A, 1B, 1C and 1D of Article III.
As noted previously, the final sentence of Art. XVI, § 1 provides that, "[w]hen two or more amendments are submitted at the same election, they shall be so submitted as to enable the electors to vote on each amendment separately." While that provision, in the context of Art. XVI, § 1, clearly applies to constitutional amendments proposed by the Legislature, there is no analogous provision in Art. III, §§ 2, 3 and 4 dealing with the initiative and referendum. Consequently, in order to answer the question which you have presented to us, we must determine whether, in our view, the separate presentation requirement set out in Art. XVI, § 1 applies to Art. III, §§ 2 and 4.
As we stated in our Opinion No. 95089, our research on the constitutional amendment process has disclosed no Nebraska cases which deal directly with the application of Art. XVI, § 1 to the initiative process. Moreover, authorities from other jurisdictions take differing views with respect to whether separation of constitutional amendments on the ballot is required on initiated measures, and with respect to whether other procedural requirements imposed upon the constitutional amendment process are required of initiated measures. CompareEpperson v. Jordan, 12 Cal.2d 61, 82 P.2d 445 (1938) (holding that the California constitutional provision which required separate ballot presentation of legislatively proposed constitutional amendments did not apply to amendments proposed by initiative) and Wright v. Jordan, 192 Cal. 704, 221 P. 915 (1923) (holding that amendments to California constitution creating initiative right did not embody limitations placed upon legislature with respect to separate ballot presentation of separate constitutional amendments)with State ex rel. Hubbell v.Bettman, 124 Ohio St. 1, 138 N.E. 532 (1931) (indicating that an initiative petition may contain a number of separate amendments, but that those amendments must be separately presented on the ballot) and State ex rel. Cityof Little Rock v. Donaghey, 106 Ark. 56, 152 S.W. 746 (1912) (holding that the Arkansas constitutional provisions creating the initiative process were subject to other constitutional provisions restricting the number of constitutional amendments which could be submitted to the voters at one time). Seealso Annotation, Applicability of constitutionalrequirements as to legislation or constitutional amendments,to statutes or constitutional amendments under provision conferringinitiative or referendum powers, 62 A.L.R. 1349 (1929) (stating the "generalization" that, where there is no necessary conflict between other provisions of a constitution and the provisions of an initiative or referendum clause, the requirements of the other provisions apply to actions taken by initiative or referendum). As noted in 16 C.J.S.Constitutional Law § 7:
 Although some [state constitutional] provisions requiring the separation of amendments do not apply to amendments proposed under the initiative process, under other [state constitutional] provisions voters must be permitted to vote separately on separate proposals.
There are also underlying policy concerns which support both the notion that initiated constitutional amendments should not be subject to other constitutional restrictions and the notion that voters should be able to vote on separate constitutional amendments separately, even if those amendments are proposed by initiative. On the one hand, constitutional provisions dealing with the initiative and referendum create precious and fundamental rights reserved in the people. State ex rel.Brant v. Beermann, 217 Neb. 632, 350 N.W.2d 18
(1984). Consequently, the constitutional provisions dealing with the initiative and referendum should receive a liberal construction to effectuate the policy proposed by the initiative as a part of the democratic process. Id. On the other hand, as we noted in our Opinion No. 95089, the purpose of the constitutional requirement for separate presentation of separate amendments is to prevent "logrolling," where voters are required to vote for something which they do not support in order to also vote for something which they do support, and to prevent deceit upon the public through the presentation of a proposal which is misleading or not readily understandable. Fugina v.Donovan, 259 Minn. 35, 104 N.W.2d 911 (1960); 16 C.J.S.Constitutional Law § 13.
In the midst of this uncertainty, it appears to us thatSwanson v. State, 132 Neb. 82, 271 N.W. 264
(1937) offers some guidance as to how the Nebraska Supreme Court might view this question. One issue in that case centered on whether a constitutional amendment proposed by the Legislature and approved by the people of Nebraska in the November, 1936, general election took effect after the official canvass and proclamation of passage by the Governor, or as of the date of the November election. In deciding that issue, the Nebraska Supreme Court cited Art. III, § 4 of the Nebraska Constitution which provides both that "[a] measure initiated shall . . . take effect upon proclamation by the Governor which shall be made within ten days after the official canvass of . . . [the] votes," and that "[t]he method of submitting and adopting the amendments to the Constitution provided by this section shall be supplementary to the method prescribed in the article of this Constitution, entitled, `Amendments' and the latter shall in no case be construed to conflict herewith." The Court then discussed the meaning of "supplementary" in Art. III, § 4, and concluded that:
 . . . the proper construction of the above provision, already quoted from section 4, art. 3 of the Constitution [dealing with the effective date of initiated measures], is, in legal effect, to supplement, to add to and incorporate in section 1, art. 16, as though physically a part thereof, the following provisions contained in the former: That "the vote" on such amendment "shall . . . take effect upon proclamation by the Governor which shall be made within ten days after the official canvass of such votes."
On the basis of this conclusion, the Court then held that the constitutional amendment under consideration took effect as of the date provided in Art. III, § 4. Therefore, inSwanson, the Court construed the constitutional amendment provisions in Art III, § 4 together with the amendment provisions in Art. XVI, § 1, and applied the procedures for an initiative provision to an amendment proposed by the Legislature.
Under the Swanson decision, it seems clear that the procedures for amendment of the Nebraska Constitution contained in Art. III, § 4 of that document are "supplementary" to the procedures in Art. XVI, § 1, and should be added to and incorporated therein, to the extent that they are not in conflict. In a similar fashion, it appears to us that it is also possible to argue that the amendment provisions of Art. XVI which do not conflict with those of Art. III should be read as a part of the latter article, and therefore become a part of the initiative and referendum process. We do not believe that the requirement in Art. XVI, § 1 for separate ballot presentation of separate constitutional amendments conflicts in any way with the right of initiative accorded to the people in Art. III. As a result, we believe that it is likely that our courts would hold that amendment of the Nebraska Constitution by initiative under Art. III is subject to the requirement of Art. XVI, § 1 that separate constitutional amendments must be set out separately on the ballot.[1]
 B. Application of Art. XVI, § 1 to specific petitions.
In your opinion request letter you also inquire:
 If this principle [requiring separate ballot presentation of separate amendments] does apply [to initiated amendments], how will it affect two petition drives currently active and circulating? Will either of these proposals require two or more ballot questions? I have enclosed copies of the two petitions possibly affected.
You enclosed a petition entitled "Property Tax Relief Amendment" and a petition entitled "Citizens' Amendment to Reduce Property Taxes" with your opinion request.
In our Opinion No. 95089, we indicated that, for purposes of the separate ballot presentation requirement of Art. XVI, § 1, multiple proposals to amend the Nebraska Constitution may be submitted as a single proposition on the ballot if they have a natural and necessary connection with one another, and if they are part of one general subject. We believe that standard applies to the petitions which you presented to us.
The petition entitled "Property Tax Relief Amendment" would add three provisions to the Nebraska Constitution. First, the petition contains a provision similar to other provisions in the Bill of Rights in the Nebraska Constitution which would prohibit government from abridging the privileges and immunities of citizens of Nebraska, from depriving persons of life, liberty and property without due process of law, and from denying any person equal treatment and protection of the law, regardless of race, sex, age, religious beliefs or national origin. Second, the petition would flatly prohibit the levy of a tax on property in Nebraska. Third, the petition would generally impose spending and budget limits upon state and local government with provisions for required elections to approve increased taxes, government debt and so forth.
It appears to us that the final two portions of the Property Tax Relief Amendment have some natural and necessary connection with one another and are part of the general subject of taxation. We believe that they may be presented to the voters jointly. On the other hand, we do not believe that the initial portion of the petition creating general rights for individual citizens has any natural and necessary connection with the subject of taxation. We believe that it should be set out on the ballot separately.
The Citizens' Amendment to Reduce Property Taxes contains six operative sections:
 1. The Legislature would be required to establish standards of efficiency for the delivery of local government services.
 2. Quality education would be declared to be a fundamental right. The paramount duty of the state would be to provide for the thorough and efficient education of all persons from the ages of 5 through 21 enrolled in the common schools of the state.
 3. The Legislature would be required to provide for a system of school finance which would make a thorough education in an efficiently operated public school available to all persons from the ages of 5 to 21. That finance system would be maintained at certain levels of per pupil funding based upon ad valorem property taxes and state aid for a specified year.
 4. Various provisions would be added to the Nebraska Constitution dealing with the assessment and valuation of real and personal property.
 5. Property tax levies would be subject to constitutional limits.
 6. A "severability clause" would be added which would allow valid provisions of the petition to remain in effect if other portions of the petition were declared invalid.
As we noted in our earlier Opinion No. 95089, "it seems to us . . . that proposals related to property tax relief and equal educational opportunity do not have such a natural and necessary connection with one another as to make them a part of one general subject." Op. Att'y Gen. No. 95089 (November 21, 1995) at 4. As a result, we believe that items 2 and 3 in this petition should be stated separately on the ballot from items 1, 4 and 5. The severability provision in item 6 should be added to both provisions on the ballot.
 II. Application of the provision in Art. III, § 14 of the Nebraska Constitution that no bill may have more than one subject to the initiative and referendum process.
Art. III, § 14 of the Nebraska Constitution provides, in pertinent part, "[n]o bill shall contain more than one subject, and the same shall be clearly expressed in the title." Your second series of questions concerns the application of that constitutional provision to the initiative and referendum process. You first ask, "[m]ay an initiative or referendum petition contain more than one subject?"
Under Art. III, § 2 of the Nebraska Constitution, Nebraska citizens may propose either a constitutional amendment or a statute by the initiative petition process. Art. III, § 2 also specifically provides that, "[t]he constitutional limitations as to the scope and subject matter of statutes enacted by the Legislature shall apply to those enacted by the initiative." As a result, it appears to us that astatute proposed by the people through the initiative process is governed by the requirements of Art. III, § 14, and cannot contain more than one subject.
On the other hand, while Art. III, § 2 contains provisions which specifically apply other constitutional requirements concerning the scope and subject matter of legislation to statutes proposed by initiative, no such requirement is placed on constitutionalamendments proposed by that process. As a general rule, based upon the maxim of statutory construction, "expressio unius es exclusio alterius," the enumeration of specified matters in a constitutional provision usually is construed as an exclusion of matters not enumerated, unless a different intention is apparent. 16 C.J.S. Constitutional Law § 25. Therefore, the fact that Art. III, § 2 specifically applies the one subject rule to statutes proposed by initiative, yet is silent with respect to constitutional amendments proposed in the same manner, indicates that initiated constitutional amendments are not subject to that requirement. On that basis, we believe that initiative petitions proposing constitutional amendments can contain more than one subject.[2]
You next ask, "[i]f an initiative or referendum petition may contain only one subject, what guidelines or test should be used to determine whether a petition contains one or more subjects?" Since we have concluded that initiative measures to propose a statute can contain only one subject under the express provisions of Art. III, § 2, we will respond to this question as it applies to initiated statutes.
The general rule with regard to the one subject requirement of Art. III, § 14 is stated in Midwest Popcorn Co. v.Johnson, 152 Neb. 867, 872, 43 N.W.2d 174, 178 (1950):
 An act, no matter how comprehensive, is valid as containing but one subject if a single main purpose is within its purview and nothing is included within it except that which is naturally connected with and incidental to that main purpose.
Similarly, in Anderson v. Tiemann, 182 Neb. 393,408-09, 155 N.W.2d 322, 332 (1967), the Nebraska Supreme Court stated, "[i]f an act has but one general object, no matter how broad that object may be, and expresses the subject of the bill, it does not violate Article III, section 14, of the Constitution." We have also pointed out that, in our view, the Nebraska Supreme Court has adopted a liberal construction with respect to the interpretation of the constitutional one subject rule embodied in Art. III, § 14. Op. Att'y Gen. # 87018 (February 11, 1987).
Finally, if the single subject rule applies, you pose two additional related questions. First, "who makes the determination that a petition does or does not comply?" And second, "at what stage of the initiative or referendum process is such a determination made?" Again, we will respond to those questions with respect to statutes proposed by the initiative process.
The obvious quick response to your question pertaining to who makes the determination that a particular initiative petition for enactment of a statute does or does not comply with Art. III, § 14 is that a court would do so in the context of an actual case or controversy before it. However, we assume that your question was posed in regard to the election process, and your part in it.
Neb. Rev. Stat. § 32-1409 (1995) deals with signature verification procedures for initiative and referendum petitions. Subsection (3) of that section provides, in pertinent part:
 The Secretary of State shall total the valid signatures and determine if constitutional and statutory requirements have been met. The Secretary of State shall immediately serve a copy of such determination by certified or registered mail upon the person filing the initiative or referendum petition. If the petition is found to be valid and sufficient, the Secretary of State shall proceed to place the measure on the general election ballot.
(emphasis added). We believe that this subsection provides at least some basis for an argument that your office has authority to decide if an initiated proposal to enact a statute complies with Art. III, § 14. However, in State ex rel. Brant v.Beermann, 217 Neb. 632, 350 N.W.2d 18 (1984), the Court stated, in relation to § 32-704[3]:
 Unless the subject of the proposed petition on its face is invalid or unconstitutional, the Secretary of State cannot pass upon the validity or construction of any proposed law, when the proposed petition is presented for filing pursuant to § 32-704. An example of the Secretary of State's determining the validity of an initiative measure would be found in an initiative petition proposing a statutory abolition of a constitutional office.
Id. at 637, 350 N.W.2d at 21. (Emphasis added).[4] As a result, it seems to us that any authority which you may have to determine the constitutional validity of a particular initiative petition effort is limited to recognition of a constitutional defect which is patent and appears on the face of the petition. Absent such an obvious and facial defect, you would be required to place the measure on the ballot, assuming that all signature and other procedural requirements were met.
It also seems to us that any such determination of constitutional invalidity in connection with an initiative effort to propose a statute would be made on the second occasion when you have contact with the initiative process. Under Neb.Rev. Stat. § 32-1405 (Supp. 1995), proponents of a particular initiative measure are now required to file a statement concerning the object of their petition and the text of the measure with your office prior to the collection of petition signatures. You then forward those materials to the Revisor of Statutes who reviews the measure and suggests changes "as to form and draftmanship."[5] After that process is completed, you return any suggestions from the Revisor of Statutes to the petition sponsors for their consideration, and ultimately, you prepare camera-ready copies of the petition for use by the sponsors. Consequently, you have considerable involvement in the initial preparation of the initiative petition under § 32-1405. However, the statute which arguably provides you with authority to review the initiative petition for validity and sufficiency, § 32-1409, impacts the petition process later, when signed petitions are filed with your office for verification. As a result, it appears to us that your authority to determine the validity of an initiated measure arises the second time you review the initiative petition, when it is presented for signature verification and placement on the ballot.
 III. Application of Neb. Rev. Stat. § 32-1408 (Cum. Supp. 1994) to the initiative and referendum process.
 Neb. Rev. Stat. § 32-1408 (Cum. Supp. 1994) provides:
 The Secretary of State shall not accept for filing any initiative or referendum petition with interferes with the legislative prerogative contained in the Constitution of Nebraska that the necessary revenue of the state and its governmental subdivisions shall be raised by taxation in the manner the Legislature may direct.
Your final questions involve the application of this section to the initiative and referendum. You wish to know what guidelines should be used in determining if an initiative or referendum "interferes" with the Legislature's taxing prerogative. You also wish to know at what stage in the initiative or referendum process that decision should be made, and whether the two petitions which you sent to us should be accepted for filing under § 32-1408.
In Morris v. Marsh, 183 Neb. 521, 162 N.W.2d 262
(1968), the Nebraska Supreme Court considered whether a particular initiative measure to amend the Nebraska Constitution to prohibit the State of Nebraska from levying an income tax for state purposes should be placed on the general election ballot. The Court ultimately concluded that the initiative in that case should be placed on the ballot, based upon its compliance with the statutes pertaining to the initiative and referendum process. However, the Court also stated:
 The power to tax is essential to the continued existence of a state. A constitutional amendment which would destroy or completely emasculate that power might well be itself unconstitutional. That issue is not presently here.
Id. at 536, 162 N.W.2d at 271.
In 1969, LB 935 was amended to add the language above which is currently codified in § 32-1408. 1969 Neb. Laws LB 935. At that time, we issued an opinion in which we considered the propriety and effect of the amendment to LB 935 which became § 32-1408. In that opinion, we stated:
 . . . it would be our opinion, on the basis of language in both the majority and dissenting, opinion in the Morris case, supra, that the Secretary of State has authority to reject petitions to submit measures which would emasculate the state's power to tax. Indeed, the Legislature could neither add to, nor subtract from, those matters subject to initiation and reference. It would be our opinion that the subject amendment would be merely a statutory declaration of power already vested in the Secretary of State.
1969-70 Rep. Att'y Gen. 55 (Opinion No. 34, dated April 29, 1969).
We continue to believe that the Legislature cannot, by means of a statute such as § 32-1408, limit the right of initiative or referendum reserved to the people of Nebraska in the Nebraska Constitution. On the other hand, it may well be that, as stated in the Morris case and our Opinion No. 34 in 1969, an attempt to totally emasculate the state's power to tax would be so patently and facially unconstitutional as to allow you, as Secretary of State, to refuse to place the initiative or referendum on the ballot in the manner discussed above. Therefore, as we stated in 1969, we believe that the language at issue in § 32-1408 is, at most, a statutory declaration of the power already vested in the Secretary of State, and would arguably allow you to refuse to place an initiative or referendum provision on the ballot if that measure would destroy or completely emasculate the state's power to tax. That is the "guideline" which should be used to determine if a particular referendum or initiative interferes with the legislative prerogative to tax as referenced in § 32-1408.
As noted above, there are two occasions when your office has contact with the initiative or referendum process: when the object statement and text of the measure is presented to your office prior to obtaining any signatures, and when the petitions are presented to your office for a determination as to validity and sufficiency. For the reasons discussed in the previous section, we believe that a determination that a petition so interferes with the legislative taxing prerogative as to destroy the state's taxing power and to violate § 32-1408 should be made on the second of those occasions, when the petitions are presented for signature verification.
Finally, you ask if either of the petition measures which you sent to us entitled "Property Tax Relief Amendment" or "Citizens' Amendment to Reduce Property Taxes" violates §32-1408 so as to become ineligible for filing. It appears to us that neither of those proposed initiative measures would completely destroy the state's power to tax. As a result, it is our view that neither of those measures would violate §32-1408.
IV. Summary
To summarize our lengthy discussion above, we believe that the provision in Art. XVI, § 1 of the Nebraska Constitution requiring separate ballot presentation of separate constitutional amendments does apply to constitutional amendments proposed by the initiative process. On the other hand, we believe that the "one subject rule" for legislative bills set out in Art. III, § 14 of the Nebraska Constitution does not apply to the initiative or referendum process, except as to statutes proposed by initiative. Therefore, in our view, an initiative petition proposing constitutional amendments can contain more than one subject, so long as those differing amendments are set out separately on the ballot.
It also seems to us that you, as Secretary of State, may have authority to refuse to place an initiative measure on the ballot if it is patently unconstitutional or clearly invalid on its face. In that regard, you may be able to refuse to place an initiative or referendum measure on the ballot under §32-1408 if, on its face, that measure completely destroys the state's power to tax. Any such determination to refuse to place an initiative or referendum measure on the ballot would be made at the time the petitions are presented to your office for signature verification.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
Approved:
Don Stenberg
Attorney General
[1] We would also point out that our conclusion with respect to this question is further supported by the general rule that the Nebraska Constitution must be read as a whole, and that constitutional amendments become an integral part of the instrument and must be construed and harmonized, if possible, with all other constitutional provisions so as to give effect to every section and clause, as well as to the whole instrument.Duggan v. Beermann, 245 Neb. 907, 515 N.W.2d 788
(1994).
[2] We also believe that referendum petitions under Art. III, § 3 may contain more than one subject, for much the same reasons. The referendum is invoked to submit statutes passed by the Legislature to a vote of the people. There is no specific provision in Art. III, § 3 which applies the one subject rule to the referendum process. Since the referendum provision was originally added to the Constitution in 1912 as one subsection in a series dealing with initiative and referendum, we believe that the same premise applies as with constitutional amendments proposed by initiative.
[3] Neb. Rev. Stat. § 32-704 (1993) was the predecessor of § 32-1409. That statute allowed the Secretary of State to determine the "validity and sufficiency" of petition efforts.
[4] The quoted language from the Brant case is technically dicta, and there are cases from other jurisdictions holding that the substantive constitutionality of a proposed initiative measure may not be determined prior to the submission of the measure to the electorate. Annotation, InjunctiveRelief Against Submission of Constitutional Amendment,Statute, Municipal Charter, or Municipal Ordinance, onGround that Proposed Action Would BeUnconstitutional, 19 A.L.R. 2d 519 (1951). On the basis of those cases, it would be possible to argue that you have no authority to determine the substantive constitutionality of a particular initiative or referendum measure.
[5] We would note here that the Revisor of Statutes also may have some authority to pass on the validity of a particular initiative for adoption of a statute under the one subject rule of Art. III, § 14. If, in the course of the Revisor's review of a particular initiative for form and draftmanship, it is noted that the measure contains more than one subject, then, as is presumably the case with bills proposed by the Legislature, the Revisor can note the problem in the suggestions for revision.