CITY OF DUBUQUE, Appellant, v. LEO J. MEUSER, County Treasurer, Appellee; STATE OF IOWA, Intervenor-Appellee.

No. 47103.

(Reported in 31 N. W. 2d 882)

APRIL 6, 1948.

John J. Kintzinger and John K. Chalmers, both of Dubuque, for appellant.

Robert L. Larson, Attorney General, Folsom Everest, Special Assistant Attorney General, and M. M. Cooney, of Dubuque, for intervenor-appellee.

F. H. Becker, of Dubuque, for appellee.

GARFIELD, J.—Plaintiff, City of Dubuque, filed its petition for a writ of mandamus to compel defendant treasurer of Dubuque county, to sell the property of the Dubuque Bridge Commission for nonpayment of taxes for 1945, payable in 1946,

amounting to $10,631, upon the Iowa portion of the Julien Dubuque bridge across the Mississippi river, between Dubuque, Iowa, and East Dubuque, Illinois. Defendant's answer alleges the bridge is exempt from taxes by virtue of a written agreement between the bridge commission and the state of Iowa made in November 1945, copy of which is attached to the answer. In a petition of intervention the state of Iowa makes the same contention and adopts all allegations of defendant's answer.

' Plaintiff challenged the sufficiency of the pleaded defense and the petition of intervention by motions to strike which the trial court overruled. Pursuant to an order of a justice of this court under Rule 332, Rules of Civil Procedure, plaintiff has appealed from such interlocutory rulings.

The bridge plaintiff city claims is subject to taxation was constructed by the City of Dubuque Bridge Commission pursuant to an Act of Congress which created the commission, chapter 318, First Session 76th Congress, 53 Stat. at L. 1051, approved July 18, 1939, as amended by a later act approved April 30, 1940. The bridge carries the traffic on U. S. Highway 20 over the Mississippi river. The written agreement, copies of which are attached to the answer and the State's petition of intervention, is between the bridge commission "and the State of Iowa, acting by and through the Iowa State Highway Commission," and provides in part:

"2. Pursuant to * * * Chapter 138 of the laws of the 51st General Assembly of Iowa, and * * * Section 7 of the Act of the 76th Congress, creating said Bridge Commission * * * the Bridge Commission hereby agrees to give to the State of Iowa that portion of said bridge located within the State of Iowa; said title to and possession thereof of said portion of said bridge to be transferred to said State by deed or other suitable instruments of conveyance when all outstanding indebtedness or other obligations against said bridge have been paid and discharged, subject to the condition that such portion of said bridge shall thereafter by the State be properly maintained, repaired and operated free of tolls. * * *

"4. The State hereby agrees to accept title to that portion of said bridge located within the State of Iowa, when all

outstanding indebtedness or other obligations against said bridge have been paid and discharged, and * * *

"5. * * * agrees after accepting title to and possession of that portion of said bridge located within the State of Iowa, to properly maintain, repair and operate said portion of said bridge free of tolls."

Defendant and intervenor contend the above agreement was made pursuant to chapter 138, Acts of the Fifty-first General Assembly (section 313.28 et seq., Code, 1946), approved April 13, 1945, which provides that should the owner of any bridge such as the Julien Dubuque bridge offer to give it "to the state, the state highway commission is hereby authorized, in its discretion, to accept such offer in the name of the state of Iowa, and to enter into written agreements evidencing such acceptance.

"313.29 Indebtedness paid. When all outstanding indebtedness or other obligations against such bridge * * * have been paid and discharged the state highway commission shall accept transfer of title thereof to the state and is thereafter authorized to take possession of, operate and maintain such bridge * * * or any part thereof, free of tolls, as part of the primary road system.

"313.30 Taxes forgiven. Any such bridge * * * which has been offered to the state highway commission and with respect to which the commission has entered into a written agreement accepting such offer, shall after the date of such agreement, be free from * * * taxes in this state."

The tax exemption claimed by defendant and intervenor is that provided by section 313.30 just quoted.

We may observe at the outset that the power to tax is legislative and is vested in the general assembly by our state constitution. State ex rel. Howe v. Mayor etc. of City of Des Moines, 103 Iowa 76, 82, 88, 72 N. W. 639, 39 L. R. A. 285, 64 Am. St. Rep. 157; Iowa Railroad Land Co. v. Soper, 39 Iowa 112, 123, 124. See, also, 51 Am. Jur., Taxation, section 42. The power to tax includes the power to exempt from taxation. 51 Am. Jur., Taxation, section 501. The power of a municipality to tax is conferred upon it by the legislature. State ex rel. Howe

v. Mayor etc. of City of Des Moines, supra; 38 Am. Jur., Municipal Corporations, section 382. Thus there can be no doubt of the legislative power to exempt the bridge in question from taxes.

■ I. Plaintiff states the first question presented by this appeal is whether the State became the owner of the part of the bridge located in Iowa by virtue of the agreement between it and the bridge commission. We think, however, we are not called upon to determine this question.

It is true both the answer and the State's petition of intervention allege the State became "the owner of the property" by virtue of the written agreement. Plaintiff argues at length the State did not become such owner upon execution of the agreement. This allegation of ownership is not essential to either the answer or petition of intervention and is in the nature of surplusage. Both these pleadings also allege that when the agreement was made the property became free from taxes and defendant is without authority to collect them by tax sale or otherwise.

The claim of exemption from taxes is not dependent upon the State's ownership of any part of the bridge. Defendant and intervenor do not rely upon section 427.1(1), Code, 1946, which lists among the classes of property that shall not be taxed "The property of the United States and this state." As stated, they claim under Code section 313.30, above quoted, which provides such a bridge as this "which has been offered to the state highway commission and with respect to which the commission has entered into a written agreement accepting such offer, shall after the date of such agreement, be free from * * * taxes in this state."

Both the written agreement here and Code section 313.28 et seq., contemplate that before the State accepts title to such a bridge all outstanding indebtedness against it shall "have been paid." But the legislature obviously intended the exemption from taxes should accrue upon the making of such an agreement and not upon the acquisition of title by the State.

From what we have said of course it is not to be inferred that the term "owner" is restricted to holder of the legal title

or that the State did not become the equitable owner upon making the agreement with the bridge commission. The term "owner" is one of quite general application, frequently applied to one having an interest in or claim upon property much less than absolute and unqualified title. Prudential Ins. Co. v. Kraschel, 222 Iowa 128, 131, 266 N. W. 550, 552, and citations. See, also, 30 Words and Phrases, Perm. Ed., 604, 607 et seq.

Even though the State may not now be the owner of the Iowa portion of the bridge, we think it has sufficient interest in the subject matter of ·the litigation and in the success of defendant to intervene under Rule 75, Rules of Civil Procedure, by joining with defendant. In all probability the State will acquire legal title to the Iowa portion of the bridge under its agreement. As indicated, under section 313.29, above quoted, the State cannot accept the title until all outstanding indebtedness has been paid. Obviously the time for transfer of title will be accelerated if the bridge commission is not compelled to pay taxes which exceed, for the year in question, $10,000.

Further, the State has merely interposed the same defense pleaded by defendant. If such defense is good it is conclusive against plaintiff's action even if the State had not intervened. It would seem therefore plaintiff is not prejudiced by permitting the State to join defendant in asserting such defense.

II. Plaintiff says the second question presented is whether the agreement between the bridge commission and the State contains an acceptance of an offer of the bridge by said commission to the state highway commission as required by Code section 313.30.

Section 313.30, quoted above, provides in substance for exemption from taxes of such a bridge "which has been offered to the state highway commission" and which offer such commission has, by written agreement, accepted. Plaintiff contends the agreement here does not comply with the statute because, it is said, the agreement provides for an offer to and acceptance by the State and not the highway commission. The contention is without merit.

It is true the agreement states the bridge is offered to and accepted by the State. Section 313.28 et seq., plainly say the

gift of such a bridge is to the state to whom the title is to be transferred when outstanding indebtedness is paid. The highway commission acts merely as an agent of the State in accepting the offer. By section 313.28 such commission's authority is to accept the offer in the name of the State.

In construing chapter 138, Acts of the Fifty-first General Assembly, the sections thereof should be considered together in the light of their relation to the whole act. Ahrweiler v. Board of Supvrs., 226 Iowa 229, 231, 283 N. W. 889; In re Adoption of Karns, 236 Iowa 932, 936, 20 N. W. 2d 474, 477, and citations. Plaintiff would have us consider merely the wording of section 313.30.

The agreement here provides at the outset, as already stated, that it is between the bridge commission and the State, acting by and through the highway commission. It contains an agreement by the bridge commission to give the Iowa portion of the bridge to the State. The latter, acting through its highway commission agrees to accept the offer. The agreement is signed by the highway commission. It substantially conforms to section 313.28 et seq.

If the agreement did not mention the State, but purported to be merely with the highway commission, as plaintiff apparently contends it should, the legal effect would be the same. The commission is merely an arm or agent of the State, acting within the powers conferred upon it by statute. It would have no power to acquire the property in question except as such agent. See Long v. State Highway Comm., 204 Iowa 376, 213 N. W. 532; State v. F. W. Fitch Co., 236 Iowa 208, 211, 17 N. W. 2d 380, 382. See, also, Bachman v. Iowa State Highway Comm., 236 Iowa 778, 783–786, 20 N. W. 2d 18, 20, 21.

III. The final question presented is whether the Act of Congress above referred to confers authority upon the bridge commission to enter into the agreement with the State. Plaintiff contends no such authority is conferred.

The Act of Congress which creates the bridge commission characterizes it as a "public body, corporate and politic." Plaintiff argues, we think correctly, it has only such powers (1) as are expressly granted by the act; or (2) those necessarily or fairly implied in or incident to the powers expressly conferred;

or (3) those necessarily essential to the identical objects and purposes of the corporation, as by statute provided, and not those which are simply convenient. Van Eaton v. Town of Sidney, 211 Iowa 986, 989, 231 N. W. 475, 476, 71 A. L. R. 820, and citations; Iowa Elec. Co. v. Town of Cascade, 227 Iowa 480, 483, 288 N. W. 633, 634, 129 A. L. R. 758; Cowin v. City of Waterloo, 237 Iowa 202, 210, 21 N. W. 2d 705, 709, 163 A. L. R. 1327.

We think the power of the bridge commission to make the agreement in question falls within those described in (2) and (3) above and within the incidental powers conferred by the Act of Congress itself. The Act provides:

"Sec. 7. (a) After payment of the bonds and interest * * * the Commission shall deliver deeds or other suitable instruments of conveyance of the interest of the Commission in and to the bridge * * * within Iowa to the State of Iowa or any municipality or agency thereof as may be authorized by or pursuant to law to accept the same (hereafter referred to as the 'Iowa interests') * * * under the condition that the bridge or bridges shall thereafter be free of tolls and be properly maintained, operated, and repaired by the Iowa interests * * *.

"Sec. 8. For the purpose of carrying into effect the objects stated in this Act, there is hereby created the City of Dubuque Bridge Commission * * * said body * * * may contract and be contracted with * * * hold or dispose of real estate and other property * * * and shall have and possess all powers necessary, convenient, or proper for carrying into effect the objects stated in this Act."

The Act thus expressly directs the bridge commission to convey title to the bridge to the State under condition that it thereafter be free of tolls and properly maintained, operated and repaired. The agreement here carefully provides for such maintenance, repair and operation free of tolls. The power thus expressly conferred on the bridge commission fairly implies the power to enter into the agreement here made. Transfer of title to real estate is ordinarily preceded by a written agreement providing therefor. It could scarcely have been intended

the transfer of title here would not be preceded by such an agreement.

Perhaps the principal object of the Act of Congress seems to have been to provide for a bridge or bridges, to be transferred to the state or some municipality or agency thereof, to be by it operated free of tolls. By making the agreement in question the bridge became, under section 313.30, free from taxes. The agreement thus hastens the time when the bridge will be free of indebtedness and may be transferred to the State and by it operated free of tolls. The agreement is therefore a proper means of carrying into effect this object of the congressional act.

Plaintiff claims something for the fact that in In re Appeal of Dubuque Bridge Comm., 232 Iowa 112, 5 N. W. 2d 334, we decided that another bridge of the Dubuque Bridge Commission, held under the same Act of Congress, was not exempt from taxes. The decision is of no aid to plaintiff. It merely holds that the Act of Congress and our Iowa statutes *then in effect* provided no such exemption. Subsequent to our decision in the cited case chapter 138, Acts of the Fifty-first General Assembly, was enacted which provides, in Code section 313.30, the present exemption from taxes.

Upon a consideration of all questions presented, the rulings of the trial court are affirmed.—Affirmed.

All JUSTICES concur except SMITH, J., who takes no part.