DIETRICH, Appellant, *v.* CITY OF DEER LODGE et al.,
Respondents.
No. 8975
Submitted April 12, 1950. Decided May 10, 1950.
218 Pac. (2d) 708

Messrs. Murphy, Garlington and Pauly, Missoula, Mr. J. M.

Dietrich, Jr., Deer Lodge, for appellant. Mr. Dietrich and Mr. N. C. Pauly argued orally.

Mr. S. P. Wilson, Deer Lodge, for respondents. Mr. Wilson argued orally.

Mr. Arnold H. Olsen, Atty. Gen., and Mr. Robert L. Word, Jr., Special Asst. Atty. Gen., argued the case amici curiae.

MR. JUSTICE METCALF:

Suit in equity to enjoin the sale of bonds of the city of Deer Lodge, Montana, in the amount of $40,000. Upon the filing of the complaint the district court of Powell county issued a temporary restraining order against defendants and directed that, on a day certain, they show cause why the injunctive order should not be made permanent. Defendants interposed a general demurrer to the complaint and a motion to quash the injunctive order. Both the demurrer and motion were allowed, whereupon plaintiff elected to stand on his complaint and suffered judgment of dismissal to be entered against him, from which judgment he has taken this appeal.

The suit is by J. M. Dietrich, plaintiff, against the defendants, City of Deer Lodge, the mayor, city clerk and the eight councilmen of the city.

The complaint avers: The defendant city of Deer Lodge is a duly constituted political subdivision of the state of Montana and the other ten named defendants are the officials of the city;

Main street is a duly established public street and thoroughfare in the city and constitutes a portion of U. S. Highway No. 10 as it extends through the business section of the defendant city along which are located substantially all of the retail stores and business establishments of the city, situate on property abutting and fronting on such street;

Plaintiff is a freeholder paying taxes on real and personal property owned by him within the limits of the city situate approximately five blocks distant from Main street, none of which property abuts or fronts on Main street;

U. S. Highway No. 10 is a main transcontinental highway that

has been given certain specifications by the Montana state highway commission and by the public roads administration of the federal works agency of the United States;

Main street as now established and constructed does not conform to specifications prescribed by the state highway commission and by the public roads administration of the federal works agency of the United States relating to U. S. Highway No. 10.

To make Main street conform to such specifications, it was proposed that under federal aid project No. FI-184 (10) the street be improved by widening and repairing it with asphaltic concrete at a total cost of approximately $156,000, the city to contribute 25 % thereof and the remaining 75 % to be defrayed, paid out and liquidated by the United States Government through its public roads administration and the state of Montana through its state highway commission.

In order to carry out the arrangement, bonds were issued under the provisions of section 11-2301 et seq., R. C. M. 1947. The plaintiff contends the contemplated improvement can be achieved only by the compliance with the special improvement district statutes, R. C. M. 1947, sections 11-2201 to 11-2281, inclusive, secs. 5225-5277-5, R. C. M. 1935, Ch. 149, Laws of 1943 and Ch. 260, Laws of 1947.

The sole question is whether or not in this state a municipality can issue general obligation bonds for the purpose of paving and widening its streets.

There are some fundamental precepts of long standing in this jurisdiction that govern the creation of indebtedness by a municipal corporation and guide us in the determination of this question.

In City of Helena v. Helena Light & R. Co., 63 Mont. 108, 207 Pac. 337, 339, this court declared: "A city is but a political subdivision of the state for governmental purposes, owing its very existence to the legislative will, and capable of exercising only such powers as are granted, either directly or by necessary implication * * * The streets of a city are public high-

ways (section 1612, R. C. M. 1921), and though the city is charged with the duty of keeping them in repair, and the cost of maintenance is imposed upon the city, nevertheless jurisdiction over them is primarily in the state, and the city acts with respect to them subject to the general laws of the state.''

In State ex rel. Great Falls Housing Authority v. City of Great Falls, 110 Mont. 318, 328, 100 Pac. (2d) 915, 920, this court quoted with approval from McClintock v. City of Great Falls, 53 Mont. 221, 163 Pac. 99, saying: ''A city of this state is a creature of statute. Independently of legislation it cannot exist—cannot exercise any functions whatever.'' (Citing many cases.)

The legislature has granted to the city or town councils the powers enumerated in R. C. M. 1947, sections 11-901 to 11-989, specifically granting powers for many purposes. Other powers are exercised in accordance with other provisions of Title 11, R. C. M. 1947.

The authority of the city or town council to contract an indebtedness on behalf of the city or town by borrowing money or issuing bonds is found in R. C. M. 1947, section 11-966, wherein the following purposes are enumerated: ''Erection of public buildings, construction of sewers, bridges, docks, wharves, breakwaters, piers, jetties, moles, waterworks, lighting plants, supplying the city or town with water by contract, the purchase of fire apparatus, the construction or purchase of canals or ditches and water rights for supplying the city or town with water, and the funding of outstanding warrants and maturing bonds * * *.''

R. C. M. 1947, section 11-937, authorizes the establishment of a jail; 11-947 a detention hospital; 11-955 a workhouse; 11-905 grants the power ''To build or hire all necessary buildings for the use of the city or town * * *.'' But it is to section 11-966 that we must turn to find the authority of the city or town to incur an indebtedness or issue bonds for the erection of public buildings.

Likewise, section 11-909 gives the city or town council the

power to provide for lighting and cleaning streets, requires snow removal and regulates the removal of ashes, garbage and other offensive matters. But the legislature has only granted authority for issuance of bonds for street lighting purposes and has made a special provision in section 11-909 for the cost of garbage removal.

Certain sections of the statute authorize the city to perform certain acts and specifically authorize the incurring of indebtedness therefor. For example, by section 11-988 the legislature granted the city or town council authority "to contract an indebtedness * * * by borrowing money or issuing bonds for the construction, purchase or development of an adequate supply of natural gas," etc.

In section 11-1008 the city or town is "authorized to establish and maintain a public bathing place within said city or town, and to defray the cost and expense of maintaining said public bathing place, said city or town is hereby authorized and empowered to contract an indebtedness, upon behalf of said city or town, upon the credit thereof, by borrowing money or issuing bonds * * *."

In section 62-201 the legislature has granted the city or town council the power "To contract an indebtedness on behalf of a city or town, upon the credit thereof, by borrowing money or issuing bonds for the purpose of purchasing and improving lands for public parks and grounds; and/or for procuring by purchase, or construction, or otherwise, swimming pools, athletic fields, skating rinks, playgrounds, museums, a golf course, a site and building for a civic center, a youth center," etc.

By section 11-986 the city or town council is granted the power to acquire lands for landing fields or parking areas of aircraft. This section was originally enacted in 1927 by Chapter 20, Laws of 1927. But in order to permit the cities and towns to borrow money and issue bonds for the acquisition of lands and equipment and construction of buildings at airports, a subsequent legislature deemed it necessary to enact legislation expressly

authorizing such actions. Sec. 1-804, R. C. M. 1947, enacted as sec. 4, Ch. 108, Laws of 1929.

This court has repeatedly stated that unless the power is vested ■ in the municipality by express law or is necessarily implied or essential to the accomplishment of the purposes of the municipality the presumption is against the exercise by the city of any such powers. Stephens v. City of Great Falls, 119 Mont. 368, 175 Pac. (2d) 408; State ex rel. Housing Authority v. City of Great Falls, supra; State ex rel. Gebhardt v. City Council of Helena, 102 Mont. 27, 55 Pac. (2d) 671; City of Bozeman v. Merrell, 81 Mont. 19, 261 Pac. 876; Wibaux Improvement Co. v. Breitenfeldt, 67 Mont. 206, 215 Pac. 222; State ex rel. City of Billings v. Billings Gas Co., 55 Mont. 102, 173 Pac. 799; Sharkey v. City of Butte, 52 Mont. 16, 155 Pac. 266; Shapard v. City of Missoula, 49 Mont. 269, 141 Pac. 544; Helena Light & R. Co. v. City of Helena, 47 Mont. 18, 130 Pac. 446.

The inquiry must always be: "(1) Whether there is an express grant; (2) whether there is a grant by necessary implication; or (3) whether the power in question is indispensable to the accomplishment of the object of the corporation." Milligan v. City of Miles City, 51 Mont. 374, 383, 153 Pac. 276, 278, L. R. A. 1916C, 395.

"The reason for the rule is that it must be presumed that ■ the state has granted in clear and unmistakable terms all that it intended to grant at all." State ex rel. Quintin v. Edwards, 40 Mont. 287, 106 Pac. 695, 699, 20 Ann. Cas. 239.

Section 11-906 gives the city or town council the power "To lay out * * * pave, or otherwise improve streets * * *." There is no mention of the power to incur indebtedness or issue bonds. Nor does section 11-966, supra, authorize the city or town to incur indebtedness or issue bonds to carry out the power granted in section 11-906. Nowhere is there an express grant of such power.

The accepted mode of issuing bonds for the paving, repairing ■ and widening of streets when an indebtedness has to be

incurred for that purpose is by means of a special assessment and the creation of a special improvement district. R. C. M. 1947, sec. 11-2201.

This is the means provided by the legislature for the city or town to carry out the authority granted by section 11-906. Then the power to issue general obligation bonds is not "necessary" or "indispensable" to enable the city or town to discharge its responsibility for providing adequate streets and alleys.

"When a power is conferred upon a municipal corporation ▪ and the mode in which it is to be exercised is prescribed by the statute or an independent act, such procedural method must be followed." State ex rel. Daly v. Dryburgh, 62 Mont. 36, 47, 203 Pac. 508, 511 and cases therein cited. See also, Mountain States Power Co. v. City of Forsyth, D. C. Mont., 41 F. Supp. 389, 391, reversed on other grounds, 9 Cir., 127 F. (2d) 583.

A good deal of reliance is placed upon the quotation from 5 McQuillin, Municipal Corporations, 2d Ed., sec. 2010: "A grant of power authorizing payment for public improvements by special assessments is usually construed as not affecting the power of the municipal corporation to make improvements and pay therefor out of the general revenue." The cases cited in the footnote give scant support to the rule therein laid down as applied to the instant question. The cited cases are in two categories. One, where there was a pre-existing general power either express or necessarily implied to issue general obligation bonds for paving purposes and the legislature subsequently authorized the municipality to provide for paving by special assessments or special improvement districts. In such cases the courts have held that the additional method did not deprive the municipalities of the powers previously granted. The second situation arose in jurisdictions where the municipalities are held to have inherent authority to carry out the powers granted them by the legislature.

The cases are not in point. In this jurisdiction the municipal

corporation possesses no inherent power and there has never been an express authorization for the issuance of general obligation bonds for paving purposes.

However it is contended that there is a grant of authority to █ issue such bonds by the provisions of section 11-2301. That section is in part: "Whenever the council * * * shall deem it necessary to issue bonds for any purpose whatever, under its powers as set forth in any statute or statutes of this state * * * the question of issuing such bonds shall first be submitted to the electors of such city or town * * * in the manner hereinafter set forth * * *."

The phrase "under its powers as set forth in any statute or statutes of this state" means under its power to incur indebtedness or issue general obligation bonds as set forth in any statute. The city or town council is not authorized to issue general obligation bonds to carry out any of the powers enumerated in section 11-901 et seq. and other sections. To give such an interpretation to section 11-2301 would be to read sections 11-966, 11-1008, 62-201 and other sections completely out of the Code.

An examination of the history of section 11-2301 demonstrates that it is a procedural statute rather than a grant of authority. Section 11-2301 et seq. merely prescribe the procedure under which general obligation bonds may be issued when the power to incur such indebtedness is granted by a specific legislative Act.

Section 11-2301 was first enacted as section 1, Chapter 160, Laws of 1931. The title declared that the Act was for the purpose of "Providing the Procedure and the Duties of City and Town Officers" in connection with the issuance of bonds by incorporated cities and towns. As originally enacted, section 1 provided that "Whenever the council of any city or town * * * shall deem it necessary to issue bonds for any purpose whatever, under its powers as set forth in subdivision 64 of Section 5039 of the Revised Codes of Montana, 1921, or amendments thereto, the question of issuing such bonds shall first be submitted to the qualified electors of such city or town in the man-

ner hereinafter set forth * * *'' etc. Subdivision 64, section 5039, is now section 11-966, supra, the general section authorizing cities and towns to contract indebtedness for the erection of public buildings, sewers, bridges, waterworks, etc.

After an immaterial amendment by the 1933 legislature the section was incorporated in the 1935 Codes as section 5278.1, R. C. M. 1935.

The question then arose as to the procedure for issuing bonds and holding bond elections for purposes authorized by such sections as 62-201 and 11-1008 for public parks, public baths, etc. This became extremely important in 1935 and 1936 when many municipalities were anxious to cooperate with the federal government and sponsor public works projects for the relief of unemployment. Therefore the 1937 legislature struck out the specific reference to section 5039.63, R. C. M. 1935, and made the procedure uniform for all purposes for which the legislature had authorized the municipality to incur an indebtedness.

The legislature has reserved the right to issue general obligation bonds for purposes other than paving and widening streets. There is good reason for this because the constitutional debt limitation requires that the power to borrow money and issue bonds upon the credit of the city or town be carefully preserved. The alternative method of a special improvement district has been provided for paving and widening streets. This system has been accepted for many years in this state. If it is desirable to change this long established system of municipal financing the legislature can do so by express legislation. It is not incumbent upon this court to upset long established precedents, to disarrange the whole system of municipal financing and depart from fundamental principles of statutory construction to add an additional field of expenditures financed by the general credit of the municipality.

The judgment is reversed. The cause is remanded with directions to overrule defendants' demurrer and motion to quash and for further proceedings not inconsistent with this opinion.

ASSOCIATE JUSTICES ANGSTMAN, FREEBOURN and BOTTOMLY concur.

MR. CHIEF JUSTICE ADAIR (specially concurring):

Certain established principles and rules of construction, not canvassed by the briefs filed, are here controlling, viz:

1. A city of this state has only such authority as is conferred upon it by express legislative declaration or by necessary implication. Shapard v. City of Missoula, 49 Mont. 269, 278, 141 Pac. 544; Sharkey v. City of Butte, 52 Mont. 16, 19, 155 Pac. 266; state ex rel. City of Billings v. Billings Gas Co., 55 Mont. 102, 108, 173 Pac. 799; State ex rel. Great Falls Housing Authority v. City of Great Falls, 110 Mont. 318, 328, 100 Pac. (2d) 915.

2. Powers conferred upon a municipality cannot be enlarged by liberal construction. Van Eaton v. Town of Sidney, 211 Iowa 986, 231 N. W. 475, 477, 71 A. L. R. 820, 825.

3. All powers conferred are to be strictly construed. Van Eaton v. Town of Sidney, supra.

4. Where a statute confers certain specific powers, those not enumerated are withheld. City of Bozeman v. Merrell, 81 Mont. 19, 25, 261 Pac. 876; Van Eaton v. Town of Sidney, supra; City of Dubuque v. Meuser, 239 Iowa 446, 31 N. W. (2d) 882, 886; Jensen v. Town of Afton, 59 Wyo. 500, 143 Pac. (2d) 190, 195.

5. A doubtful power is a power denied. Otherwise stated,— a doubt as to the existence of a particular power will be resolved against the city and the right to exercise the power withheld and denied. State ex rel. Quintin v. Edwards, 40 Mont. 287, 303, 106 Pac. 695, 20 Ann. Cas. 239; State ex rel. City of Billings v. Billings Gas Co., supra; Wibaux Improvement Co. v. Breitenfeldt, 67 Mont. 206, 208, 215 Pac. 222; City of Bozeman v. Merrell, supra; 1 McQuillin, Municipal Corporations, 2d Ed., Rev., sec. 368; Fullerton v. Central Lincoln People's Utility Dist., 185 Ore. 28, 201 Pac. (2d) 524, 528.

6. A municipal corporation may not issue bonds under an implied power; it must have express power therefor. Van

Eaton v. Town of Sidney, supra; Fullerton v. Central Lincoln People's Utility Dist., supra; 64 C. J. S., Municipal Corporations, sec. 1902, p. 475, notes 19-25.

7. The reason for the foregoing rules is that it must be presumed that the state has granted in clear and unmistakable terms all that it intended to grant at all. State ex rel. Quintin v. Edwards, supra, 40 Mont. at page 303, 106 Pac. 695, 20 Ann. Cas. 239.

8. "The right of a municipality to issue bonds is not a political or governmental power, but is rather a private corporate power conferred for local purposes. *The issuance of general bonds* to be paid for by general taxation is, however, recognized as a *governmental* act." Emphasis supplied. 64 C. J. S., Municipal Corporations, sec. 1902, p. 476, notes 30-35.

R. C. M. 1947, section 11-906, conferring upon cities the power to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, parks and public grounds and vacate the same, does not expressly grant to municipalities the power to issue bonds to provide money for such purposes. Hence under the above stated rules and principles and the authorities cited the power to issue bonds therefore not being enumerated has been and is withheld and denied. Added strength is given this construction and holding by R. C. M. 1947, sections 11-2201 to 11-2281, which expressly provide for the financing of such improvements through special improvement districts, section 11-2231 providing for the issuance of bonds by such improvement districts, and sections 11-2205 and 11-2214 authorizing such districts to include lots not fronting on the street to be improved when benefited by the improvement. Express means are thus provided for obtaining the improvements other than the issuance of general bonds therefor. Under the statutes as they now read, the method so expressly provided by the legislature must be held to be exclusive.

The trial court's orders allowing defendants' demurrer and

motion to quash, being erroneous, must be set aside and vacated and I concur in the reversal of the judgment of dismissal.

Rehearing denied June 9, 1950.