INDEPENDENT SCHOOL DISTRICT OF DANBURY, appellant, v. EARL J. CHRISTIANSEN, defendant, and SCHOOL DISTRICT OF SOLDIER TOWNSHIP, CRAWFORD COUNTY, intervening defendant, appellees.

No. 47827.

(Reported in 49 N.W.2d 263)

964

Baron, Caine & Haines, of Sioux City, for appellant.

R. H. Brannon, of Denison, for Earl J. Christiansen, appellee.

L. W. Powers, of Denison,.for intervening appellee.

MULRONEY, J.—This appeal presents questions concerning the right of a school district to recover from another school district, where certain pupils resided, the transportation costs and tuition for school facilities furnished said pupils by the creditor district. Before stating the facts we will set forth the two statutes upon which plaintiff's action is based. Section 282.21, Code, 1950, provides:

"If payment is not made, the board of the creditor corporation shall file with the auditor of the county of the pupil's residence a statement certified by its president specifying the amount due for tuition, and the time for which the same is claimed. The auditor shall transmit to the county treasurer an order directing him to transfer the amount of such account from the funds of the debtor corporation to the creditor corporation, and he shall pay the same accordingly."

Section 285.1(13), Code, 1950, provides:

"When a local board fails to pay transportation costs due to another school for transportation service rendered, the board of the creditor corporation shall file a sworn statement with the county board of education specifying the amount due. The county board of education shall check such claim and if the claim is

valid shall certify to the county auditor. The auditor shall transmit to the county treasurer an order directing him to transfer the amount of such claim from the funds of the debtor corporation to the creditor corporation and the treasurer shall pay the same accordingly."

The Independent School District of Danbury, Woodbury County, Iowa, brought this mandamus action against the defendant Christiansen, County Auditor of Crawford County, to collect tuition and transportation charges for pupils from the Independent School District of Soldier Township, Crawford County, Iowa, that attended the Danbury school during the 1949-1950 school year. The plaintiff's petition alleged that the "Board of Directors of Soldier Township District, Crawford County, Iowa, designated by appropriate action, the Danbury Public School * * * as the school to be attended by all elementary school pupils living in subdistrict No. 3 of the Soldier Township School District and provided for the payment of the cost of transportation incurred by the Independent School District of Danbury, Iowa, in furnishing transportation for all said elementary school pupils who attended said designated school; that said designation and arrangement for transportation was confirmed and approved by the County Board of Education of Crawford County, on or about July 15, 1949; and that said action of the Board of Directors of Soldier Township School District, Crawford County, Iowa, was thereafter submitted to and approved by the State Superintendent of Public Instruction for the State of Iowa."

The petition went on to allege that plaintiff approved and consented to the action of the Soldier district and pursuant thereto it provided transportation and school facilities for elementary pupils residing in Soldier subdistrict No. 3 during the 1949-1950 school year. The petition then stated that in January 1950 the secretary of the board of directors of the Soldier district notified plaintiff that the latter board refused to pay the tuition and transportation costs for such elementary pupils for the first semester of the 1949-1950 school year, whereupon plaintiff, on February 11, 1950, filed an account with the defendant auditor for tuition and costs of transportation of said pupils for said semester in the sum of $498.40 and demanded that defendant issue an order to the

county treasurer of Crawford County directing the treasurer to transfer the amount of said account from the funds of the Soldier district to the plaintiff district. The petition asserted the defendant refused to issue the order and that thereafter plaintiff submitted the matter to the County Board of Education of Crawford County, which board set the matter for hearing on April 12, 1950, and gave due notice of said hearing to all interested parties and at said hearing the Crawford County Board of Education issued an order to defendant Crawford County auditor to transmit an order to the Crawford County treasurer to make the requested transfer of Soldier district funds for the full amount of said account, but defendant refused and continues to refuse to transmit such order to the treasurer.

The balance of the petition deals with the claim made at the close of the school year and therein it is alleged that on July 19, 1950, plaintiff submitted to defendant auditor "an account in the sum of $1003.40 certified and sworn to by the president of its Board of Directors, for the tuition and cost of transportation for said elementary students attending the Danbury public school for the full year of 1949-1950 under said designation and plaintiff again requested defendant to issue and transmit to the County Treasurer of Crawford County, Iowa, an order directing the said treasurer to transfer the amount of said account from the funds of the Soldier Township School District to the plaintiff, but that again the defendant neglected and refused to issue said order * * *."

The prayer was for a writ of mandamus commanding defendant to issue the order to the Crawford County treasurer directing him to transfer the sum of $1003.40 from the funds of the Soldier district to plaintiff.

Before defendant filed a pleading the Soldier school district filed a motion for leave to intervene stating the action was one to require the county auditor to dispose of its funds and therefore it was the real party in interest and in addition the action involved movant's acts and conduct and it was in a position to know what the real facts are and in "equity and good conscience" such facts should not be determined in its absence.

The motion to intervene was resisted by plaintiff on the ground the Soldier district was not an interested party; that "the

action is in mandamus to compel a public official to perform an official act, mandatory of said official upon a showing that said public official received a certified statement by the president of the plaintiff specifying the amount of tuition due the plaintiff"; that this is not an action to determine the validity of the amounts claimed due and such issue cannot properly be determined by the court in this action; and that intervenor has a full and adequate remedy by injunctive proceedings if it desires to contest the validity of the debt claimed by the plaintiff as due from the intervenor.

The trial court granted the Soldier district's motion to intervene and that district immediately filed a motion to strike, a motion to dismiss and, subject to the rulings on the motions, an answer. The defendant auditor later, on the day of the hearing, filed an answer admitting some of the allegations of the petition and denying others because of lack of knowledge or information sufficient to form a belief and alleged he refused to issue the order to the treasurer "because of his notice that the original claim was rejected by Gustav Siles, secretary of the Soldier Township School Board."

The trial court overruled intervenor's motion to strike but sustained the motion to dismiss on the ground that the allegation in the petition that the plaintiff school was "designated by appropriate action" of the Board of Directors of Soldier Township District as the school to be attended was insufficient because the statute (section 282.7, Code, 1950) provides a board of directors can only make such designation of an outside school when it has by record action discontinued any or all of its own school facilities. The trial court in its ruling stated:

"The designation cannot be made without meeting the prerequisites, and on the face of the pleading it does not appear to be proper unless the pleading states that the statutory prerequisites were met. For the designation to be properly pleaded in this case it must have first been pleaded that the board in the designating district first discontinued some or all of its school facilities. Without this there is no authority shown for the designation. For this reason and on this ground the motion to dismiss is sustained." .

The trial court's ruling also held that the petition failed to

state a proper cause of action for relief by way of mandamus because under the statutes quoted in the first part of this opinion the action which the defendant auditor was to take was discretionary and requires the exercise of his judgment "in the determination of facts, the facts to be determined being whether the statutory prerequisites to a designation exist."

The plaintiff, declining to plead further, appeals and asserts error (1) in allowing the Soldier district to intervene and (2) in sustaining the motion to dismiss.

I. We feel one of the first questions to decide is whether the petition states a cause of action in mandamus—whether the trial court was right in his ruling that the county auditor's action under the quoted statutes was discretionary. If the trial court was right in this ruling the case is at an end for mandamus will not lie to control discretion. Section 661.2, Code, 1950. The mandamus action allowed by our statutes is one "to obtain an order commanding an inferior tribunal, board, corporation, or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station." Section 661.1, Code, 1950.

As Justice Bliss said in Pierce v. Green, 229 Iowa 22, 39, 294 N.W. 237, 248, 131 A. L. R. 335, 350:

"Mandamus under the statute (Code section 12440) [now 661.1, Code, 1950] is available to compel the defendants to perform an act which the law enjoins as a duty of their office. These duties which they have knowingly and deliberately refused to perform are imperative duties. They are commands of the legislature."

This court has been called upon many times to determine whether an act which a statute states shall be performed by a public officer is ministerial or one involving discretion. In First Nat. Bk. v. Hayes, 186 Iowa 892, 901, 902, 171 N.W. 715, 718, we approved these definitions of ministerial and discretionary acts which we drew from other authorities:

"A ministerial act has been defined as 'one which a person or board performs upon a given state of facts, in a prescribed manner, in observance of the mandate of legal authority, and

970

without regard to or the exercise of his own judgment upon the propriety of the act being done.' * * *

 " 'Discretion may be defined, when applied to public functionaries, as the power or right conferred upon them by law of acting officially under certain circumstances, according to the dictates of their own judgment and conscience, and not controlled by the judgment or conscience of others.' "

The above definitions were quoted and approved in Taylor County Farm Bureau v. Board of Supervisors, 218 Iowa 937 at 940, 252 N.W. 498. See also Iowa Nat. Bk. v. Stewart, 214 Iowa 1229, 232 N.W. 445; Charles Hewitt & Sons Co. v. Keller, 223 Iowa 1372, 275 N.W. 94; 55 C. J. S., Mandamus, section 63, and 43 Am. Jur., Public Officers, section 258.

 The act required of the county auditor under sections 282.21 and 285.1 (13), both supra, is that he "shall transmit to the county treasurer an order directing him to transfer" funds. When is he to transmit this order? Under section 282.21, supra, he is to transmit this order when there is filed with him "a statement certified by its [creditor school corporation] president specifying the amount due for tuition, and the time for which the same is claimed." There is no discretion given to the auditor in this language. He is not given the power to transmit the order or not according to the dictates of his own conscience.

The same is true with respect to section 285.1 (13), supra. Here the direction is that he transmit the order to the treasurer when "the board of the creditor corporation shall file a sworn statement with the county board of education specifying the amount due" and the county board of education certifies it to him as valid. No discretion at all is given to the auditor under either statute to transmit or withhold the order to the treasurer, once the certified statements are filed with him. The auditor's action under either statute is purely ministerial and it is no less ministerial because he must satisfy himself that certain facts exist. 55 C. J. S., Mandamus, section 63. The only fact he determines is whether the required certifications were filed with him. The answer filed by the auditor here raises no question of the certification. The auditor merely states he refused to transmit the order because "the original claim was rejected" by the secretary of the Soldier school board. To allow the auditor to refuse to transmit the order

because the home district rejected the claim would render the statute a nullity. As will be noted under each statute, the home district can pay the tuition and the transportation claims direct and it is only when the home board fails or refuses to pay that the statutes are operative.

There is nothing in either statute that would give the auditor the right to determine the validity of the accounts certified to him before transmitting the order to the treasurer. The law presumes public officers and boards do their duty—that false certifications would not be made. In the transportation statute (section 285.1 (13)) it is specifically provided that the county board of education shall determine the validity of the claim. The same is true with respect to the auditor's right to determine whether the statutory prerequisites to the designation were met before transmitting the order to the treasurer. It is not for him to review the action of the Soldier district, the Crawford County Board of Education, and the State Superintendent of Public Instruction to see if they acted legally in the matter.

We hold the duty imposed on the auditor by sections 282.21 and 285.1(13), both supra, is purely ministerial. He had no duty to act according to the dictates of his own judgment. The legislature prescribed a mandatory duty to transmit the order when the required certified account was filed with him.

■■ II. The foregoing ruling on the question of whether the statutes call for ministerial or discretionary acts really decides the main question in the first error asserted, namely: the Soldier district's right to intervene.

Rule 75, Rules of Civil Procedure, provides that "any person interested in the subject matter of the litigation, or the success of either party to the action, or against both parties, may intervene at any time before trial begins, by joining with plaintiff or defendant or claiming adversely to both."

In City of Dubuque v. Meuser, 239 Iowa 446, 31 N.W.2d 882, a mandamus action to compel a county treasurer to sell a bridge for nonpayment of taxes, we held under the above rule 75 that the State of Iowa, soon to be the owner of the bridge under a written agreement, had sufficient interest to intervene and interpose the same defense as the treasurer, namely: that the bridge was exempt from taxes.

In the instant case we have no doubt at all as to the correctness of the trial court's ruling granting the Soldier district the right to intervene. But the right granted is not blanket authority for the intervenor to enlarge the scope of the mandamus action to reach other issues it would like to have determined. 55 C. J. S., Mandamus, section 254; Miller v. Seaman, 137 Pa. Super. 24, 33, 8 A.2d 415, 418; State ex rel. Nelson v. Butler, 145 Neb. 638, 17 N.W.2d 683; Wright v. Jordan, 192 Cal. 704, 221 P. 915. In mandamus actions there is another rule that an intervenor who is not an indispensable party cannot change the position of the original parties by broadening the scope of the mandatory action.

In 55 C. J. S., Mandamus, section 254, page 478, it is stated: "Although they may oppose the granting of the writ, the right of an intervening defendant to defend rises no higher than that of the original defendant."

In Miller v. Seaman, supra, it is held: "Their right to defend as intervening defendants in this proceeding—mandamus—rises no higher than the original defendant's."

We have held the auditor's act under the statutes is ministerial, which means the Soldier district would not be an indispensable party. In State ex rel. Nelson v. Butler, 145 Neb. 638, 650, 17 N.W.2d 683, 691, it is held:

"An intervenor who is not an indispensable party cannot change the position of the original parties, or change the nature and form of the action or the issues presented therein * * * or introduce new and foreign issues into the action as joined by the original parties, a rule which obtains in the great majority of jurisdictions. * * * An intervenor cannot widen the scope of the issues * * * or broaden the scope or function of mandamus proceedings * * * or raise questions which might be the subject of litigation but which are extraneous to the controlling question to be decided in the case."

We hold that under rule 75, Rules of Civil Procedure, the Soldier district would have sufficient interest to allow it to intervene and the trial court was right in so ruling. But the trial court's ruling goes further and holds its right as intervenor gave it the right to assail the validity of the claims and raise the question by motion and answer as to whether the statutory prerequi-

sites for designation had been met. In this the trial court was consistent for the court held the auditor had discretion to decide those questions and therefore the holding that intervenor could raise the same issues would not be changing the issues. But we hold the auditor's act was ministerial; that he could not pass on the question of the validity of the claims or whether statutory prerequisites for designation were carried out. The intervenor therefore cannot in this action raise questions of the validity of the account or assert the statutory prerequisites to designation were not met. To allow intervenor to do so would be enlarging the scope of the mandamus proceeding. In short, we hold the Soldier district could intervene in opposition to the granting of the writ but the intervention it made by motion and answer was not sanctioned under the rule that an intervenor in a mandamus action cannot broaden the scope of the mandamus proceedings. Nothing in City of Dubuque v. Meuser, supra, is contrary to our holding here. There Justice Garfield pointed out the intervenor merely interposed the same defense against the issuance of the writ that was asserted by the defendant.

We do not mean to hold the home district would have no remedy against an unjust or illegal claim. In Lincoln Twp. Sch. Dist. v. Redfield Consol. Sch. Dist., 226 Iowa 298, 283 N.W. 881, and School Twp. v. Nicholson, 227 Iowa 290, 288 N.W. 123, the action was by the home district against the treasurer, after the auditor had transmitted the order, to enjoin the treasurer from transferring the funds pursuant to the auditor's order. In the Nicholson case the question of whether the pupils who attended the designated school were residents of the home school district was tried out. In Mt. Hope Sch. Dist. v. Hendrickson, 197 Iowa 191, 197 N.W. 47, the action was against the auditor seeking to enjoin him from issuing a warrant to the designated school district. In this action also the question of whether the pupils who attended the designated school were residents of the home district was tried out.

The above actions were in conformity with an attorney general's opinion rendered in 1928. (Report of Attorney General, 1928, page 429) where he ruled that under section 4278 (now 282.21) "it is the mandatory duty of the county auditor to make the order upon the treasurer upon receipt by him of a statement

certified by the president of the creditor corporation. *The debtor corporation has its remedy by injunction if there is a defense to the claim.* The county auditor, however, has no discretion in the matter and he should act upon receipt of the statement as provided by statute." (Italics supplied.)

III. The other ground of intervenor's motion which the trial court sustained was that the petition did not allege any or all of the schools in Soldier district were closed. In so far as the defendant was concerned the allegation in paragraph 3 of the petition that the designation was "by appropriate action" of the Board of Directors of the Soldier district was more or less preliminary. The defendant's answer to this paragraph was a denial on the ground he was without "knowledge or information sufficient to form a belief." The intervenor's answer denied the allegation and alleged any designation, if made, would be "illegal and void" because the school in subdistrict 3 was not closed during 1949-1950 school year. We have ruled the intervenor cannot inject the issue as to the legality of the designation in this mandamus suit to compel the defendant auditor to perform a ministerial duty. This cannot be done by answer and it cannot be done by a motion assailing the allegation "designated by appropriate action" as insufficient to allege a legal designation. In other words, there was no duty on plaintiff in the mandamus suit against the auditor to plead or prove that any or all of the schools in Soldier district were closed. Section 282.7, Code, 1950, states:

"The board of directors in any school district may by record action discontinue any or all of its school facilities. When such action has been taken, the board shall designate an appropriate approved public school or schools for attendance."

Proof of the "record action" of discontinuance would be all that would be required in plaintiff's suit against the auditor and certainly such proof could be introduced under the allegation "appropriate action." Intervenor cannot in this suit compel the plaintiff to affirmatively plead, and of course to prove, that any or all of the schools in Soldier district were actually discontinued. As against the auditor the plaintiff is entitled to the writ upon proof of the record or "appropriate action" of designation plus proper certification. The auditor who is to perform a ministerial

·function cannot by motion or answer raise the issue as to the legality of that record action of designation and, as we have heretofore pointed out, the intervenor cannot broaden the issues in the mandamus proceeding to ·test the legality of designation.

■ IV. Perhaps it is unnecessary to speculate on the reasons behind such legislation. As we said in Waddell v. Board of Directors, 190 Iowa 400, 406, 175 N.W. 65, 67:

"The defendant is a school corporation. It is a legislative creation. It is not organized for profit. It is an arm of the state, a part of its political organization. * * * It has no rights, no functions, no capacity, except such as are conferred upon it by the legislature. The legislative power is plenary. It may prescribe its form of organization and its functions today, and it may change them tomorrow."

Perhaps the legislature was motivated by a desire to lessen litigation between the state's five thousand school districts. It is evident the legislation is a part of the state's program authorizing a district to close schools and designate other schools for the pupils to attend. It gives an expedient and summary method of collection for the district that furnished the transportation and school facilities against the school district that had the primary burden of educating the pupils, without resorting to the courts every time the home district neglected to pay.

■ V. The Soldier district in its reply brief devotes about two pages to an argument that section 282.21, Code, 1950, is not applicable as a collection method for tuition for elementary students—that the section only applies to collection of tuition for high school pupils. The argument is based on the fact that the statute was first enacted as section 4, chapter 146, Acts of the Thirty-fourth General Assembly, which act pertained to the payment of tuition for pupils attending high schools located in other districts. It is doubtful if the point was raised by the intervenor's motion to dismiss and it does not appear that such an argument was presented to the trial court. But in any event there is no merit in the argument. A great many of these school laws were amended, revised and codified by the Extra Session of the Fortieth General Assembly. While it may once have been a part of the statute pertaining to the collection of high school tuition, it

was "revised and codified" and placed in a separate section by the Fortieth Extra General Assembly, where it became section 39 of S. F. 101, exactly like it appears today in the Code of 1950 as section 282.21. This senate file, containing about forty-five sections, does not purport to legislate with respect to high school students only. Many of the other sections of S. F. 101, like many other sections in chapter 282, Code, 1950, deal with elementary pupils. The separation of this statute (section 282.21, Code, 1950) from its original setting in a high school tuition statute was not done by the code editor. It was done by a later legislature (40th Ex. G. A.). There is nothing in the statute that indicates it is limited to high school tuition and it is significant that the later legislature placed it in one bill where it was "revising and codifying" legislation with respect to both high school and elementary school pupils.

The position of the various statutes in chapter 282, Code of 1950, is of no particular significance. The fact that section 282.21 follows section 282.20 which has to do with high school tuition is of no importance. Section 282.21, the method of collection statute, must be read with both sections 282.7 and 282.20. Section 282.7 provides for the payment of tuition fees by the resident district when the latter has "discontinued" any or all of its school facilities—elementary or high school. Under this statute the creditor district for elementary or high school pupils is the "designated" school unless in the case of high school pupils who care to waive transportation, where the creditor district can be any high school of the pupil's choice. Undoubtedly there were school districts which had no high schools when the statute was passed. The legislature desired to put such districts in the same position as a district that had discontinued its high school. This was done in section 282.17, and in 282.19 it took care of the entry requirements for such pupils. Then in section 282.20 it made provision for the amount of the tuition fee for high school pupils attending school outside the district. Then follows the general section providing for the manner of collection of tuition fees by creditor districts or section 282.21 in controversy. In other words, section 282.7 and following sections provide the resident district shall pay when it has discontinued school facilities, or in the case of high school pupils when it "does not offer a four-year high school

course." Section 282.17. Payments shall be made to designated schools for elementary pupils, any school of a high school pupil's choice if the resident high school is discontinued and the pupil cares to waive transportation, and any high school that will receive him when the resident district does not have a high school.

After outlining the above situations where debtor and creditor situations will arise between resident districts and those that furnish school facilities it makes the general statute providing for the summary method of collection if the tuition is not paid. Of course the general statute as to the method of collection followed the last debtor-creditor relationship the legislature described, or high school pupils, but that does not mean it is limited to high school tuition. Section 282.7 specifically states the resident district shall pay the tuition for elementary pupils, and the collection method set forth in section 282.21 is available wherever tuition is not paid by the district of the pupil's residence. A statute such as section 282.21 is not read as if it were merely a continuation of the statute it immediately follows. All of the preceding statutes dealing with a resident district's obligation to pay the district that furnishes school facilities are to be considered. The subject heading of section 282.21 "Collection of tuition fees" is broad. This is not the code editor's heading. It was placed there by the Fortieth Extra General Assembly (section 39 of S. F. 101). The manner of collecting tuition fees from a pupil's resident district, provided in the statute, is available wherever the obligation to pay such tuition is created in the preceding statutes in the chapter. To uphold appellee's contention the result would be the summary remedy would be available for creditor districts for tuition and transportation for high school pupils and transportation for elementary pupils, but not available for tuition for elementary pupils. No reason suggests itself why the legislature would make such a distinction as to the payment by the home district of tuition for elementary students. We do not feel the legislative history of the statute compels such a result.

The judgment of the trial court is reversed and the cause remanded for further proceedings in conformity with this opinion.—Reversed and remanded.

OLIVER, C.J., and BLISS, SMITH and MANTZ, JJ., concur.

WENNERSTRUM, HAYS and THOMPSON, JJ., dissent.